PEOPLE v McGHEE

Docket No. 256767. Submitted September 13, 2005, at Lansing. Decided
November 8, 2005, at 9:05 a.m.

Larry A. McGhee was indicted in the Oakland Circuit Court on
several controlled substances offenses following the 1998 raid of a
home he owned. The defendant was declared a fugitive and was
subsequently arrested in Georgia in 2001. The court, John J.
McDonald, J., granted the defendant's motion to suppress certain
evidence found in the garage of the home. The Court of Appeals,
GRIFFIN, P.J., and WHITE and MURRAY, JJ., reversed. 255 Mich App
623 (2003). The jury subsequently convicted the defendant of
possession with intent to deliver 650 grams or more of cocaine,
possession with intent to deliver less than 50 grams of heroin, and
possession with intent to deliver marijuana. The defendant ap-
pealed.

The Court of Appeals held:

1. The trial court did not err by denying the defendant's
request to instruct the jury on the lesser offense of possession with
intent to deliver 50 to 225 grams of cocaine. A requested instruc-
tion on a necessarily included lesser offense need only be given if
a rational view of the evidence indicates that the element distin-
guishing the lesser offense from the greater offense is in dispute.
The trial court gave an instruction on possession with intent to
deliver 225 to 650 grams of cocaine because the jury could conclude
that the defendant possessed the controlled substances found in
the house but not those in the garage. While the defendant argues
on appeal that the jury could have found him guilty of possessing
only the cocaine located in the pocket of a coat found in the search,
he did not argue or present evidence at trial that he possessed a
lesser amount.

2. The trial court did not abuse its discretion by refusing to
give an accomplice instruction. Under the automatic reversal rule
of People v McCoy, 392 Mich 231 (1974), still applicable at the time
of trial, the instruction is required only if the evidence supports it.
While an individual testified concerning cocaine purchases he
made from the defendant in 1995, that individual was not an
accomplice or coconspirator to the offenses charged in this case.

Moreover, the trial court instructed the jury concerning witness credibility and plea agreement testimony.

3. The trial court did not abuse its discretion by admitting evidence of other acts, including evidence of (1) 1995 drug sales, (2) a 1992 search of the same house that uncovered controlled substances and a weapon, and (3) the defendant's flight. The evidence was admitted for proper purposes under MRE 404(b) to show that the defendant knowingly possessed the controlled substances, intended to deliver them, and had a plan or scheme. Evidence of intent shown by the defendant's prior involvement with controlled substances under similar circumstances is relevant to negate the reasonable assumption that the incident in this case was an accident. The six-year gap between the 1992 incident and the incident in this case was insufficient to dispel the probative value given the similarity of the acts, and the remoteness of the acts only affected the weight of the evidence. Evidence of flight and avoidance of capture may be used to show consciousness of guilt. The probative value of the evidence was not substantially outweighed by its prejudicial effect, which the trial court took care to limit.

4. Nonetheless, because it appears that certain evidence related to the 1992 incident resulted from a substantial and deliberate search and seizure violation, involving false statements to obtain a warrant, that evidence should have been suppressed and not admitted under MRE 404(b) in this case. The admission of the evidence did not amount to a constitutional violation, however, and the defendant failed to demonstrate that it is more probable than not that the error affected the outcome. The prosecution presented evidence that demonstrated that the defendant had exclusive control over the premises, and it would be reasonable to infer that the defendant knew the controlled substances were there. Although relevant to knowledge and intent, evidence from the 1992 raid was not required for a conviction, and the trial court gave limiting instructions. Reversal is thus not required.

5. The prosecution presented sufficient evidence that the defendant possessed the controlled substances with intent to deliver them. Circumstantial evidence that the defendant had exclusive control over the property where the controlled substances were found, and the reasonable inferences that arise from the evidence, is sufficient to establish constructive possession of the substances. Various documents found in the search indicated the defendant's ownership and control of the location where the drugs were found at the time they were found. While the defendant presented evidence that others had recent access to the house, witness

credibility and the weight accorded to the evidence is a question for the jury. The evidence, viewed in a light most favorable to the prosecution, would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt.

6. The defendant did not receive ineffective assistance of counsel. Defense counsel was not required to make futile objections, and defense counsel cannot be found ineffective for failing to pursue information that the defendant neglected to tell him. Defense counsel's arguments and questions did not imply that the defendant was homicidal or that he got away with a crime in 1992. Nor was defense counsel ineffective for failing to move to dismiss. Because the defendant was indicted, he did not have the right to a preliminary examination, and the information subsequently filed in this case was void and should have been vacated. Proceeding to trial on that information, however, was harmless error. Although the defendant argues that the indictment only gave him notice of two counts, the trial court could have amended the indictment to conform to the evidence at any time, MCL 767.76, and the defendant has not demonstrated prejudice.

7. The defendant was not denied a fair trial because of prosecutorial misconduct. A prosecutor may not vouch for the credibility of witnesses by claiming some special knowledge with respect to their truthfulness, but may argue from the facts that a witness should be believed, which is what the prosecutor did in this case. The plea agreement of one witness, which referred to the witness's consent to take a polygraph test, was admitted and presumably provided to the jury during deliberations. Although it is possible that the jury resolved that witness's credibility by relying on the polygraph reference, the witness was not a key witness who was involved in the charged offenses, and the jury could have determined that the defendant had the requisite knowledge and intent without the witness's testimony, so the defendant has not demonstrated that this error affected the outcome. A prosecutor may not comment on a defendant's silence in the face of accusation, but may comment on silence that occurred before any police contact and on inferences that may be drawn from a defendant's flight. Moreover, attacking the credibility of a defense theory does not shift the burden of proof. The prosecutor's comments were proper commentary on the weaknesses of the defense theory and referred to prearrest conduct. The prosecutor argued that the evidence of other acts was relevant for proper purposes and did not argue that they were substantive evidence of the defendant's guilt. Nor did the prosecutor make a civic duty argument that appealed to the jurors' fears and prejudices.

8. The defendant was not denied a fair trial when the trial court excluded evidence that the 1992 criminal case against the defendant was dismissed and that the city settled a civil suit initiated by the defendant arising out of the 1992 search. MRE 403 allows evidence to be excluded because of its potential for confusion or misleading the jury. A rule of evidence contravenes a defendant's due process right to present a defense, however, if it infringes on the defendant's substantial interest or significantly undermines a fundamental element of the defense. The defendant asserted in this case that the controlled substances belonged to his tenant, and evidence of the defendant's prior involvement with controlled substances undermined this defense. By excluding the evidence of the 1992 dismissal and settlement, the trial court denied the defendant the opportunity to impeach the credibility of the police officers involved in the earlier case who testified in this case, which affected a fundamental element of his defense. Even if the officers' testimony was discredited, however, there was sufficient evidence from which a rational jury could have found the defendant guilty, and the error was arguably harmless.

9. The trial court did not abuse its discretion by permitting brief testimony with respect to other drug raids that occurred the same day as the 1998 raid on the defendant's house. While the evidence could have suggested that the defendant took part in a conspiracy, it was also relevant to the defendant's flight. The fact that evidence is admissible for one purpose, but not another, does not make it inadmissible. The trial court also did not improperly admit hearsay evidence of conversations concerning the defendant and controlled substances. Nor did the trial court improperly restrict the defendant's right to cross-examine a witness about the extent of a bargain the witness received from the prosecution in exchange for testimony.

Affirmed.

1. EVIDENCE — CRIMINAL LAW — EVIDENCE OF FLIGHT OR ESCAPE.

The rules of evidence do not preclude evidence of criminal actions accompanying an escape because those actions are part of the res gestae of the incident; evidence of flight that shows consciousness of guilt and evidence that indicates an intent to avoid capture are probative to negate innocent intent (MRE 404[b]).

2. EVIDENCE — ILLEGAL SEARCH AND SEIZURE — SUBSEQUENT USE.

Evidence obtained through a substantial and deliberate search and seizure violation, such as the use of false statements to obtain a warrant, should be suppressed; because the exclusionary rule is a

judicially created rule rather than a constitutional rule, the admission of such evidence does not amount to a constitutional violation, and justifies reversal only if the defendant demonstrates that it is more probable than not that the error affected the outcome of the trial.

3. Evidence — Exclusion — Due Process.

A rule of evidence contravenes the due process right to present a defense if it infringes on a defendant's substantial interest or significantly undermines a fundamental element of his or her defense; the exclusion of admissible evidence in contravention of a defendant's due process rights is subject to a harmless error analysis.

4. Evidence — Admissibility for Multiple Purposes.

The fact that evidence is admissible for one purpose, but not another, does not make it inadmissible.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Danielle Walton*, Assistant Prosecuting Attorney, for the people.

*Elizabeth L. Jacobs* for the defendant.

Before: Zahra, P.J., and Cavanagh and Owens, JJ.

Owens, J. Defendant appeals as of right his jury convictions of possession with intent to deliver 650 grams or more of cocaine, MCL 333.7401(2)(a)(*i*);[1] possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*); and possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*). He was sentenced to three months' imprisonment, with credit for 90 days served, on the marijuana conviction,

---

[1] MCL 333.7401(2)(a)(*i*) was amended by 2002 PA 665, which raised the minimum amount from 650 grams to 1,000 grams. Because the instant offenses arose from circumstances occurring in 1998, defendant was charged and tried under the old version of the statute.

and to consecutive terms of 12 months' to 20 years' imprisonment on the heroin conviction and 20 to 30 years' imprisonment on the cocaine conviction. He received credit for 336 days served on the heroin sentence, but no credit on the cocaine sentence. This case arose in 1998 when officers searched a house owned by defendant and discovered the controlled substances. We affirm.

A house owned by defendant was raided in 1998. The raid uncovered a scale with cocaine residue, many documents containing defendant's name and the address of the house, a drug ledger, substantial quantities of cocaine and marijuana, a smaller amount of heroin, and a cardboard box for a Highpoint Arms firearm. Defendant was indicted in 1998 and was declared a fugitive immediately after the search warrant was executed. He was apprehended by Federal Bureau of Investigation agents in Georgia on January 19, 2001. He originally claimed he was Adonte Kraft, and had documents and a driver's license in Adonte Kraft's name. After his arrest, defendant consented to a search of his apartment and car. A black Taurus .45-caliber handgun and eight .45-caliber rounds were found in defendant's car.

Defendant moved to suppress the evidence found in the garage because the warrant did not specifically describe the garage as an area to be searched. The trial court granted the motion to suppress. The prosecution appealed, and this Court reversed. *People v McGhee*, 255 Mich App 623, 625; 662 NW2d 777 (2003). The prosecution subsequently moved to admit as other-acts evidence the facts and circumstances surrounding a 1992 search, two 1995 drug transactions, and the 2001 apprehension of defendant. The trial court granted the motion. At the start of trial, the prosecution moved to

prohibit defendant from presenting evidence with respect to the dismissal of the charges and the civil suit stemming from the 1992 raid. The court granted the motion. Loren Brown, James Webb, and Daniel Casey, former Pontiac police officers, testified about what they found during the 1992 raid. Lamark Northern, an admitted drug dealer, testified that he twice purchased cocaine from defendant in 1995. The jury found defendant guilty on all counts stemming from the 1998 raid. Defendant was sentenced accordingly.

Defendant first argues that the court erred when it refused to instruct the jury on the lesser offense of possession with intent to deliver 50 to 225 grams of cocaine. We disagree.

A claim of instructional error is reviewed de novo. *People v Fennell,* 260 Mich App 261, 264; 677 NW2d 66 (2004). Instructions are read as a whole rather than extracted piecemeal to determine whether error requiring reversal occurred. *People v Aldrich,* 246 Mich App 101, 124; 631 NW2d 67 (2001). Jury instructions must clearly present the case and the applicable law to the jury. *People v McKinney,* 258 Mich App 157, 162; 670 NW2d 254 (2003). The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence. *Id.* at 162-163, citing *People v Canales,* 243 Mich App 571, 574; 624 NW2d 439 (2000). In denying defendant's request, the trial court explained that an instruction would be given for possession with intent to deliver 225 to 650 grams of cocaine because the jury could conclude that defendant possessed the drugs in the house but not those in the garage.

With respect to defense counsel's argument that the drugs could be further segregated because the jury could have believed that the only cocaine defendant

possessed was in the coat, the court indicated that the cocaine in the coat was also in the house. Defendant argues that the jury could have found him guilty of possessing only the cocaine located in the pocket of the coat, and failure to give an instruction for possession with intent to deliver the lesser amount was error. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell,* 466 Mich 335, 357; 646 NW2d 127 (2002).

In *Cornell, supra* at 353-354, our Supreme Court, citing *Hanna v People,* 19 Mich 316 (1869), noted that MCL 768.32(1), permitting conviction of a lesser degree of the offense charged, was not limited to those offenses that were "expressly divided into 'degrees,' but was intended to extend to all cases in which different grades of offenses or degrees of enormity had been recognized." Although the Court in *People v Mass,* 464 Mich 615, 625; 628 NW2d 540 (2001), noted when addressing whether knowledge of the amount was a necessary element in a delivery charge that MCL 333.7401(2) entailed separate elements of separate offenses because it covered various drug types, the offenses here involve the same type of drug. Because the only difference here between the possession with intent to deliver offenses is the amount of the illegal substance, it would not be possible to commit the greater offense without committing the lesser offense. *People v Bearss,* 463 Mich 623, 627; 625 NW2d 10 (2001).

Nevertheless, an instruction on the lesser offense need only be given if a rational review of the evidence indicates that the element distinguishing the lesser offense from the greater offense is in dispute. *Cornell,*

*supra* at 352. Here, defendant did not argue or present evidence that he possessed a lesser amount. Therefore, a rational view of the evidence does not support defendant's claim that the amount of cocaine possessed was in dispute. *Id.*[2]

Defendant also claims that an accomplice instruction should have been given. We disagree.

A trial court's decision whether to give an accomplice instruction is reviewed for an abuse of discretion. *People v Young,* 472 Mich 130, 135; 693 NW2d 801 (2005). Our Supreme Court recently rejected the rule of automatic reversal for failure to give a cautionary accomplice instruction upon request. *Id.* at 142. Because *Young* was decided after defendant filed his appeal in the instant case, and it overruled the 30-year precedent established in *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974), we assume that *Young* is not applicable to the instant case and that the automatic reversal rule for failure to give a requested instruction regarding accomplice testimony is applicable. *Id.* at 240. However, the instruction is only required if supported by the evidence. *People v Ho,* 231 Mich App 178, 189; 585 NW2d 357 (1998).

The offenses charged in the instant case arose from the 1998 raid of defendant's house. Defendant was not on trial for the two 1995 sales to Northern, and Northern could not have been an accomplice to the instant

---

[2] Even if the amount of cocaine was in dispute, the trial court instructed the jury on the lesser offense of possession with intent to deliver between 225 and 650 grams of cocaine. The jury found defendant guilty of possession with intent to distribute 650 or more grams of cocaine. Because the jury had the choice of convicting defendant of an intermediate lesser charge, and the jury found defendant guilty of the greater charge, any error caused by the failure to give the requested instruction was harmless. *People v Wilson,* 265 Mich App 386, 396; 695 NW2d 351 (2005).

offense because he was in prison at the time. Moreover, because defendant was not on trial for conspiracy, and Northern was not indicted as a coconspirator with respect to his MRE 404(b) testimony, the witness was neither an accomplice nor a coconspirator, and an accomplice instruction was not required. *Ho, supra* at 189. Furthermore, the court informed the jury that it could consider bias and self-interest when determining credibility, and pointed out that the plea agreement may have affected Northern's bias or self-interest. Because (1) defense counsel plainly presented to the jury the potential problems with the testimony, (2) an instruction on accomplice testimony was not required because the witness was not an accomplice, and (3) the court instructed the jury on witness credibility and plea agreement testimony, defendant has not demonstrated error requiring reversal.

Defendant next argues that evidence of other acts was improperly admitted as MRE 404(b) evidence because the prosecution failed to demonstrate a purpose for admission other than to show defendant's bad character.

A trial court's admission of other-acts evidence is reviewed for an abuse of discretion. *People v Crawford,* 458 Mich 376, 383; 582 NW2d 785 (1998). A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *People v Katt,* 468 Mich 272, 278; 662 NW2d 12 (2003). Before other-acts evidence may be introduced, the prosecution must satisfy a three-part test: (a) there must be a reason for its admission other than to show character or propensity, (b) it must be relevant, and (c) the danger of undue prejudice cannot substantially outweigh its probative value, especially if there are other means of proof. *People v Sabin (After Remand),* 463 Mich 43, 55-56; 614

NW2d 888 (2000). In the case at hand, the prosecution proposed to introduce other-acts evidence to demonstrate that defendant knowingly possessed the illegal substances, that he intended to deliver the illegal substances, and that he had a plan or scheme. The reasons stated—knowledge, intent, plan, or scheme—were proper because they did not involve inadmissible character or propensity evidence, and MRE 404b(1) specifically provides for them.

Nevertheless, the prosecution may not mechanically recite a permissible reason without explaining how the evidence is relevant. *Crawford, supra* at 387. Evidence is relevant when it has a tendency to make a material fact more or less probable. *Sabin (After Remand), supra* at 60. Relevance involves two elements, materiality and probative value. Materiality refers to whether the fact was truly at issue. *Crawford, supra* at 388. Constructive possession of an illegal substance requires proof that the defendant knew of its character. *People v Nunez,* 242 Mich App 610, 615; 619 NW2d 550 (2000). And possession with intent to distribute an illegal substance requires the specific intent to distribute. *Crawford, supra* at 389. In the case at hand, the prosecution stated that defendant denied knowledge or constructive possession and claimed he did not live at the house in 1998. Moreover, a plea of not guilty requires the prosecution to prove every element of the offense. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972). Therefore, at the time of the hearing on the prosecution's motion to introduce other-acts evidence, knowledge and intent were at issue.[3]

---

[3] Defendant argues that intent was not at issue because defendant stipulated that whoever possessed the drugs intended to distribute them. However, as noted in *Crawford, supra* at 389, citing *Old Chief v United States,* 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997), "[b]ecause the prosecution must carry the burden of proving every element beyond a

Evidence of intent is relevant because it negates the reasonable assumption that the incident was an accident. *People v VanderVliet,* 444 Mich 52, 80; 508 NW2d 114 (1993). The evidence showed that defendant admitted possessing drugs in 1992, and had actually distributed drugs twice to a particular witness in 1995, and this evidence made it less likely that he acted accidentally or innocently in the case at hand. The more often a defendant acts in a particular manner, the less likely it is that the defendant acted accidentally or innocently, *VanderVliet, supra* at 79 n 35, and conversely, the more likely it is that the defendant's act is intentional. Where other-acts evidence is offered to show intent, the acts must only be of the same general category to be relevant. *VanderVliet, supra* at 80.

The 1992 incident was very similar to the 1998 incident; both incidents involved the same house and garage, both searches uncovered cocaine and marijuana, both searches uncovered illegal substances in the pocket of a jacket that was hanging in the house, and the 1992 search uncovered a shotgun while the 1998 search uncovered an empty gun box. The quantities of drugs uncovered in both searches indicated an intent to distribute. Intent to deliver may be inferred from the quantity of drugs in a defendant's possession. *People v Wolfe,* 440 Mich 508, 524; 489 NW2d 748 (1992). Although six years had passed between the two incidents, this Court has found that a 20-year gap between a prior incident and a charged offense was insufficient to dispel the probative value when the similarity of the acts indicated the defendant's scheme. *People v Knapp,* 244 Mich App 361, 380; 624 NW2d 227 (2001). The remote-

---

reasonable doubt, regardless of whether the defendant specifically disputes or offers to stipulate any of the elements, the elements of the offense are always 'in issue' and, thus, material."

ness of an act only affects the weight of the evidence rather than its admissibility. See *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001) (referring to evidence of flight to show consciousness of guilt).

While the 1995 incident was not nearly as similar, it did involve two sales of cocaine by defendant, which indicated that defendant had not disassociated himself from illegal drugs after the 1992 incident. One of the sales took place in an apartment that apparently was defendant's residence at the time. This was consistent with finding drugs at the house defendant owned in 1998. Moreover, although delivery of a controlled substance is not required to prove intent to deliver, *Wolfe, supra* at 524, and delivery itself is a general intent crime, *Mass, supra* at 627, the fact that defendant had previously completed the act of distribution was relevant to his intent to distribute. However, the admission of evidence of the 1995 sales was a close question under *Crawford*.

In *Crawford, supra* at 379-380, more than 100 grams of cocaine were found in the dashboard of the defendant's car after it was impounded as a result of a 1992 traffic stop, and the defendant was charged with possession with intent to deliver 50 to 225 grams of cocaine. The prosecution sought to introduce, and the trial court admitted over the defendant's objection, evidence of the defendant's 1988 delivery of a pound of cocaine to an undercover officer, which occurred in an apartment building. *Id.* at 380 n 1, 381. Our Supreme Court reversed, stating that there was an insufficient factual similarity between the other-acts evidence and the charged offense. *Id.* at 383, 395-396. The Court noted that if the previous crime had involved concealment of drugs in the dashboard of the defendant's car, it would likely have been admissible. *Id.* at 395 n 13.

*Crawford* is distinguishable from the instant case because one of the 1995 drug sales took place in defendant's home, while in 1998 the drugs were found in defendant's home. Unlike the defendant's situation in *Crawford, supra* at 382, in which the defendant had purchased the car just five to ten days before his arrest and had loaned the car to others during that time, there was no dispositive evidence here that anyone else had control over defendant's house during the month between defendant's eviction of his tenant and the raid. Therefore, the trial court did not abuse its discretion when it found the 1995 evidence relevant.

Other-acts evidence may also be used to negate innocent intent. *VanderVliet, supra* at 78. Evidence of flight may be used to show consciousness of guilt. *Compeau, supra* at 598, citing *People v Coleman,* 210 Mich App 1, 4; 532 NW2d 885 (1995). The term "flight" includes leaving the jurisdiction. *Coleman, supra* at 4. MRE 404(b) does not preclude evidence of criminal actions accompanying an escape because these actions are part of the res gestae of the incident. *Coleman, supra* at 5. Therefore, the circumstances surrounding defendant's 2001 apprehension in Georgia, including his change of identity and the gun and ammunition found in his car, indicated his intent to avoid capture and were probative to negate innocent intent.[4]

The third criterion is whether the danger of undue prejudice from the other-acts evidence substantially outweighed its probative value. All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that

[4] Defendant cites *People v Burnett,* 166 Mich App 741, 752; 421 NW2d 278 (1988), to support his claim that the fact that a gun was obtained while a defendant was a fugitive from justice is not probative. This case is not binding on this Court because it was decided before November 1, 1990. MCR 7.215(J)(1). In light of this Court's holding in *Coleman,* we find the authority cited by defendant unpersuasive.

should be excluded. *People v Mills,* 450 Mich 61, 75; 537 NW2d 909 (1995). Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury. *Id.* " 'This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.' " *People v Fisher,* 449 Mich 441, 452; 537 NW2d 577 (1995), quoting *People v Goree,* 132 Mich App 693, 702-703; 349 NW2d 220 (1984). There is no indication here that the evidence injected extraneous considerations.

After several arguments by the parties with respect to the other-acts evidence, the trial court indicated that it understood the issues and it applied its discretion. Although it applied the wrong standard with respect to admissibility—whether probative value exceeds prejudicial effect rather than whether probative value is not substantially outweighed by prejudicial effect—the erroneous standard worked in defendant's favor because it raised the bar to admission higher than the actual standard. Whether other-acts evidence is more prejudicial than probative is best left to the contemporaneous assessment of the trial court. *Sabin (After Remand), supra* at 71. A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *Id.* at 67. Finally, the trial court took care to limit any prejudice caused by the other-acts evidence. Therefore, we cannot conclude that the court abused its discretion by admitting the evidence.

Defendant next argues that evidence from the 1992 raid was inadmissible because it was illegally seized in

1992.[5] Generally, the exclusionary rule precludes admission of evidence obtained during an unconstitutional search. *People v Hawkins,* 468 Mich 488, 498-499; 668 NW2d 602 (2003). However, the language of neither the United States Constitution nor the Michigan Constitution requires the exclusion of evidence seized in violation of constitutional provisions. *People v Goldston,* 470 Mich 523, 529, 532; 682 NW2d 479 (2004). The purpose of the exclusionary rule is to deter police misconduct, not to make the victim of the unconstitutional search whole. *Hawkins, supra* at 499.

In *United States v Lopez-Martinez,* 725 F2d 471, 476 (CA 9, 1984), the Ninth Circuit Court of Appeals stated that even if the prior arrest were illegal, the exclusionary rule would not bar the use of the defendant's statement in a subsequent trial. The court reasoned that the exclusionary rule " 'has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.' " *Id.,* quoting

---

[5] There is no indication in the record that the 1992 search would qualify as a good-faith exception to the exclusionary rule. After an evidentiary hearing in the 1992 case, the trial court granted defendant's motion to quash because the confidential informant had never purchased drugs from the home, but the affidavit indicated that the informant told the affiant that cocaine was sold and stored on a daily basis in the home. In *United States v Leon,* 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), the United States Supreme Court noted that the flagrancy of police conduct factored into the determination of the " 'point at which the detrimental consequences of illegal police action [became] so attenuated that the deterrent effect of the exclusionary rule no longer justifie[d] its cost.' " *Id.* at 911, quoting *Brown v Illinois,* 422 US 590, 609; 95 S Ct 2254; 45 L Ed 2d 416 (1975) (Powell, J, concurring in part). The affiant testified at the evidentiary hearing that the informant had never told him drugs were at the house and had never told him he had purchased drugs at the house. Therefore, this is not a case of reasonable reliance on a search warrant that later is found invalid, but a case of deliberately false statements made under oath, and a great deal would have had to occur before the consequences of the illegal police action were sufficiently attenuated.

*United States v Calandra,* 414 US 338, 348; 94 S Ct 613; 38 L Ed 2d 561 (1974) (grand jury proceedings). It noted that if the exclusion of evidence would not cause appreciable deterrence, then use of the exclusionary rule was not warranted. *Id.*, citing *United States v Janis,* 428 US 433, 454; 96 S Ct 3021; 49 L Ed 2d 1046 (1976) (evidence obtained by a state law enforcement officer, in good-faith reliance on a defective warrant, is not excluded from a civil suit). And it relied on *United States v Raftery,* 534 F2d 854 (CA 9, 1976), in which it had found that excluded evidence could later be used in grand jury proceedings to prove perjury. *Lopez-Martin, supra* at 476. It then found that there was no suggestion of bad faith or collusion, that eight years separated the two events, and that there was no indication that the first incident was planned to ensure the success of the second. It concluded that the amount of deterrence if the statement were to be excluded was too small to outweigh the cost to society of the loss of probative evidence. *Id.*

Under a *Lopez-Martinez* analysis, the other-acts evidence in this case would not have been barred by the exclusionary rule. There was no indication that the officers in the 1992 raid were involved in the 1998 raid, nor was there any indication that they even remembered defendant. Of the three officers who participated in the 1998 raid, only one officer was questioned about the 1992 raid; he testified that he was unaware before the 1998 raid that the same house was raided in 1992 or that drugs were found in a suit jacket in 1992. However, all the officers testified regarding their respective raids that the 1992 raid was conducted by the vice section of the Pontiac Police Department, while the 1998 raid was conducted by the Oakland County Narcotics Enforcement Team. Given that four of the six officers testified that they knew nothing of the raid in which they did not

participate, that two of the six officers were not questioned about the other raid, that the raids were conducted by different police departments, and that there was no other evidence of collusion, there was no indication that the first raid was planned to ensure the success of the second. *Id.* Moreover, like the *Lopez-Martinez* case, several years separated the two raids.

The Tenth Circuit Court of Appeals in *United States v Hill*, 60 F3d 672, 677 (CA 10, 1995), on the other hand, held that the exclusionary rule applied to unlawfully obtained evidence proffered to prove an essential element of a subsequently charged offense. Although noting that several exceptions to the exclusionary rule had developed since its inception, the court reiterated that convictions could not be obtained with illegally obtained evidence. *Id.* at 678. And it noted that none of the exceptions to the exclusionary rule cited by the government involved the use of illegally obtained evidence to prove an element of an offense at trial. *Id.* While acknowledging that evidence could be admitted if its connection to police misconduct was sufficiently attenuated, the court found that the level of attenuation only occurred if the evidence fell " 'outside the offending officer's zone of primary interest.' " *Id.* at 679, quoting *Janis, supra* at 458. It reasoned:

> Here, however, the very officers who conducted the earlier criminal investigation, including a drug investigation, of this defendant were called upon to testify about that drug involvement in order to obtain a drug conviction against the same defendant for conduct that occurred within just a few months of their initial investigations. All of this is a close enough nexus to convince us that the ultimate use of this evidence fell within the officers' zone of primary interest at the time these searches and seizures occurred. [*Hill, supra* at 680.]

If *Hill* is applied to the instant case, the evidence likely should not have been admitted because the very officers who participated in the illegal 1992 raid also participated in convicting defendant in the instant case. *Id.* Moreover, the other-acts evidence was relevant to demonstrate defendant's constructive possession of the narcotics and his intent to distribute. Therefore, the evidence pertained to essential elements of the charged offense. *Id.* at 677. Although the time span between the two searches in the instant case was much longer than that in *Hill,* the 1992 search could still have been within the officers' zone of primary interest.

The "zone of primary interest" test appears to have originated in *Janis, supra* at 458. In *Janis,* the United States Supreme Court declined to exclude from a civil suit evidence obtained pursuant to a state-issued search warrant that was subsequently quashed in the criminal suit. *Id.* at 447, 458-460. In doing so, the Court quoted the holding in *Elkins v United States,* 364 US 206, 223; 80 S Ct 1437; 4 L Ed 2d 1669 (1960), that

"evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." [*Janis, supra* at 445.]

*Elkins* could be analogized to the instant case—the search conducted by officers from one police agency was determined to have violated defendant's immunity from illegal searches and seizures and, thus, was inadmissible in a subsequent trial. The *Janis* Court noted with respect to whether illegally obtained evidence should be excluded from a civil suit:

Two factors suggest that a sanction in addition to those that presently exist is unnecessary. First, the local law

enforcement official is already "punished" by the exclusion of the evidence in the state criminal trial. That, necessarily, is of substantial concern to him. Second, the evidence is also excludable in the federal criminal trial, *Elkins* v *United States, supra,* so that the entire criminal enforcement process, which is the concern and duty of these officers, is frustrated. [*Id.* at 448.]

This indicated that the entire criminal enforcement process is within an officer's primary zone of interest. The Court then distinguished its holding from that of *Elkins,* stating:

[T]he deterrent effect of the exclusion of relevant evidence is highly attenuated when the "punishment" imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil suit by or against a different sovereign. In *Elkins* the Court indicated that the assumed interest of criminal law enforcement officers in the criminal proceedings of another sovereign counterbalanced this attenuation sufficiently to justify an exclusionary rule. . . .

. . . [T]he imposition of the exclusionary rule sought in this case is unlikely to provide significant, much less substantial, additional deterrence. It falls outside the offending officer's zone of primary interest. [*Id.* at 458.]

Although much of the quoted text is dicta with respect to the instant issue, it indicates that evidence obtained by a law enforcement officer with respect to any criminal proceeding falls within the officer's zone of primary interest. It also appears to suggest that the 1992 evidence should have been excluded. When the search and seizure violation has been substantial and deliberate, the evidence should be suppressed. *United States v Leon,* 468 US 897, 908-909; 104 S Ct 3405; 82 L Ed 2d 677 (1984). Here, because the evidentiary hearing with respect to the 1992 search indicated that the officer who

swore out the affidavit for the warrant[6] provided false statements, the violation was substantial and deliberate, and the evidence should have been suppressed. *Goldston, supra* at 531 ("Evidence should also be suppressed if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his reckless disregard of the truth.").[7]

Having concluded that the MRE 404(b) evidence was improperly admitted, we must now determine whether the improper admission was harmless error. Defendant argues that the error was preserved constitutional error. The beneficiary of preserved nonstructural constitutional error must prove that the error was harmless beyond a reasonable doubt. *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). However, we conclude that the error was nonconstitutional in nature. In *Goldston, supra* at 538, our Supreme Court noted that the exclusionary rule was a judicially created rule rather than a constitutional rule. The Court, quoting the United States Supreme Court in *Leon, supra* at 906, stated:

> "The wrong condemned by the [Fourth] Amendment is 'fully accomplished' by the unlawful search or seizure itself [*Calandra, supra* at 354], and the exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.' *Stone v*

---

[6] Incidentally, the officer who was the affiant in the warrant was not one of the officers testifying.

[7] In *People v Williams*, 240 Mich App 316, 319-320; 614 NW2d 647 (2000), this Court held that suppression because of false information in an affidavit was not required unless the false information was necessary to find probable cause. However, defendant here initially prevailed in his motion to quash the 1992 evidence, there is no indication that the prosecutor appealed the trial court's 1993 decision on that issue, and the evidence with respect to the 1993 decision is incomplete. Therefore, this issue is not before this Court.

*Powell,* [428 US 465, 540; 96 S Ct 3037; 49 L Ed 2d 1067 (1976)] (WHITE, J. dissenting). The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' [*Calandra, supra* at 348]." [*Goldston, supra* at 529.]

Although the 1992 search and seizure violated defendant's rights, the admission of the evidence obtained did not amount to a constitutional violation. Preserved nonconstitutional error justifies reversal only if the defendant demonstrates it is more probable than not that the error affected the outcome of the trial. *Young, supra* at 141-142. Defendant argues that the improperly admitted evidence affected the outcome of the trial because the prosecution could not place defendant in contact with the drugs, others had access to the house and garage, the circumstantial proof of the residency documents was not decisive, and even with the improper admission of the inadmissible evidence, the jury at one point informed the court that it could not reach a verdict.

However, the prosecution presented evidence that, if believed, demonstrated defendant had exclusive control over the premises, and it would be reasonable to infer that defendant knew the narcotics were located on the premises. It is reasonable to infer that drug traffickers often keep evidence of illicit activity in their homes. *Nunez, supra* at 614-615. Therefore, evidence from the 1992 raid, although relevant to defendant's knowledge of the nature of the substances and intent to possess them, was not required to obtain a conviction. In addition, the court instructed the jury about the limited nature of the 1992 evidence, thus limiting the jury's reliance on the evidence. Moreover, defendant's evidence that others had access to the house and garage

was unpersuasive. Although it is true that the jury at one point informed the court that it could not reach a verdict, it returned a verdict of guilty on the greater offense after less than eight hours of deliberation. Furthermore, the jury was polled, and each juror affirmed the verdict. Therefore, defendant has failed to establish that the evidence more probably than not affected the reliability of the verdict.

Defendant next argues that the prosecution presented insufficient evidence to convict him of possession with intent to deliver. Specifically, defendant argues that the prosecution presented insufficient evidence that he possessed the controlled substances. We disagree.

A claim of insufficient evidence is reviewed de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt. *People v Johnson,* 460 Mich 720, 722-723; 597 NW2d 73 (1999). To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it. See *Wolfe, supra* at 516-517. The element of knowing possession with intent to deliver has two components: possession and intent.[8] *Id.* at 519. Actual physical possession is not required to meet the possession element. *Id.* at 519-520. Instead, possession may be either actual or constructive. *Nunez, supra* at 615. Constructive possession of an illegal substance

---

[8] Defendant stipulated that the person who possessed the substances recovered in the 1998 raid had the intent to deliver them. Therefore, the intent to deliver is not at issue on appeal.

signifies knowledge of its presence, knowledge of its character, and the right to control it. *Id.*

Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required. *People v McRunels,* 237 Mich App 168, 181; 603 NW2d 95 (1999). Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of possession. *Nunez, supra* at 615-616. Circumstantial evidence that a defendant had the exclusive control or dominion over property on which contraband narcotics are found is sufficient to establish that the defendant constructively possessed the drug. *Wolfe, supra* at 521. The 1998 raid uncovered (1) an electric bill in defendant's name that covered the period from August 4, 1998, to September 2, 1998, and was due September 24, 1998, (2) an insurance document dated September 2, 1998, for a 1981 Pontiac in defendant's name and containing the address where the raid took place, (3) a vehicle title to a 1981 Pontiac in defendant's name and a 1996 registration for the same car in defendant's name and containing the same address as that of the raid that were found in the car located in the garage where the raid took place, (4) photographs of defendant, (5) an application for accidental death insurance for defendant dated August 17, 1998, and containing the address of the raid, and (6) a form from the Michigan Department of Consumer and Industry Services containing a note dated August 17, 1998, addressed to defendant's nickname, "Crunch." These documents, along with defendant's 1997 driver's license, which indicated the same address as that of the raid, and a warranty deed to defendant and Velisha May for the same premises, indicated defendant's ownership and control of the location at which the drugs were found at the time when they were found.

Defendant nevertheless claims that the evidence did not show he had exclusive control or dominion over the property on which the illegal substances were found because the house had recently been a rental property, the tenant was evicted because he allowed his recently paroled brother to move in with him, the tenant did not return the keys directly to defendant, the tenant gave defendant's father access to the house without defendant's permission, the garage had a broken padlock, and the car inside the garage had a "punched" lock. Because the prosecution presented evidence that, if believed, demonstrated defendant had exclusive control over the premises, it would be reasonable to infer that defendant knew the narcotics were located on the premises. It is reasonable to infer that drug traffickers often keep evidence of illicit activity in their homes. *Nunez, supra* at 614-615.

> [A] defendant "need not have [the drugs] literally in his hands or on premises that he occupies but he must have the right (not the legal right, but the recognized authority in his criminal milieu) to possess them, as the owner of a safe deposit box has legal possession of the contents even though the bank has actual custody." [*People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995), quoting *United States v Manzella*, 791 F2d 1263, 1266 (CA 7, 1986).]

Witness credibility and the weight accorded to evidence is a question for the jury, and any conflict in the evidence must be resolved in the prosecution's favor. *McRunels, supra* at 181. Therefore, the evidence, when viewed in a light most favorable to the prosecution, would justify a rational jury's finding that defendant was guilty beyond a reasonable doubt. *Johnson, supra* at 722-723.

Defendant next claims he received ineffective assistance of counsel and gives 11 examples. We disagree.

A claim of ineffective assistance of counsel involves a mixed question of fact and constitutional law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, and its constitutional determinations are reviewed de novo. *Id.*

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. [*LeBlanc, supra* at 578.] In order to overcome this presumption, defendant must first show that counsel's performance was deficient as measured against an objective standard of reasonableness under the circumstances and according to prevailing professional norms. *Strickland v Washington,* 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens,* 446 Mich 298, 312-313; 521 NW2d 797 (1994). Second, defendant must show that the deficiency was so prejudicial that he was deprived of a fair trial such that there is a reasonable probability that but for counsel's unprofessional errors the trial outcome would have been different. *Id.* at 314; *People v Toma,* 462 Mich 281, 302-303; 613 NW2d 694 (2000). [*People v Solmonson,* 261 Mich App 657, 663-664; 683 NW2d 761 (2004).]

With respect to allegations of deficient performance, defendant first argues that counsel failed to discover or argue that (a) Webb was biased because he was a defendant in the civil suit stemming from the 1992 raid,[9] (b) the person listed on the search warrant in 1992 was Ezell Moore rather than defendant, and (c) defendant's inculpatory statement in 1992 was coerced

---

[9] Defendant argues a lack of investigation led to the unreasonable strategy of attempting to admit evidence that the criminal case in 1992 was dismissed and a civil suit was filed and settled. However, defendant challenged the admission of the 1992 evidence, and it was only after the 1992 incident was ruled admissible that defense counsel indicated his intention to admit evidence of the 1992 dismissal and the settlement of the civil suit. It clearly was proper to attempt to weaken the effect of the prosecution's evidence.

and taken in violation of his *Miranda*[10] rights. Failure to make a reasonable investigation can constitute ineffective assistance of counsel. *People v Grant,* 470 Mich 477, 485, 492, 498-499; 684 NW2d 686 (2004) (opinions by KELLY, J., and TAYLOR, J.). With respect to officer bias, although Webb's name was not specifically mentioned, defense counsel's argument against the MRE 404(b) evidence clearly encompassed Webb's actions. Moreover, while it is true that Webb was specifically named as a defendant in the civil suit, the suit also listed as defendants John Doe police officers, presumably those who participated in the 1992 search. Thus, there was no indication that counsel was unaware that Webb was a defendant in the 1992 civil suit.

With respect to the arguments that the person named in the 1992 search warrant was Ezell Moore and that defendant's inculpatory statement in 1992 was coerced and taken in violation of his *Miranda* rights, defense counsel did not raise either of these arguments. Nevertheless, counsel cannot be found ineffective for failing to pursue information that his client neglected to tell him. *Strickland, supra* at 690-691. Here, an affidavit by defendant indicated he was aware that Ezell Moore was the target of the 1992 search. Another affidavit by defendant alleged that his statement was coerced and taken in violation of his *Miranda* rights. There is no indication in the record that defendant made these facts known to trial counsel, and no indication in the record that would have reasonably alerted counsel of the need for further investigation. See *Grant, supra* at 488 (opinion by KELLY, J.). Moreover, this Court rejected a claim that evidence from a search should have been suppressed because the search warrant did not include the defendant's name, *People v*

---

[10] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Daniel,* 207 Mich App 47, 51-52; 523 NW2d 830 (1994), so any objection would have been futile.

Defendant next argues that defense counsel failed to challenge the admission of the gun discovered in 2001, and failed to challenge numerous instances of prosecutorial misconduct. The circumstances surrounding defendant's 2001 apprehension in Georgia, including his change of identity and the gun and ammunition found in his car, indicated his intent to avoid capture and were probative to negate innocent intent. As will be discussed, to the extent that any error may have occurred with respect to prosecutorial conduct, it was harmless. Therefore, counsel was not required to make futile objections. *People v Westman,* 262 Mich App 184, 192; 685 NW2d 423 (2004).

Defendant next argues that counsel was ineffective by opening the door to testimony that implied that the gun recovered in 2001 was stolen and then failing to move to strike the answer as nonresponsive. Because defendant's argument is based entirely on supposition and is unsupported by legal authority, defendant has failed to demonstrate that his trial counsel erred by asking the question or by failing to move to strike the answer.

Defendant next argues that counsel erred by failing to challenge evidence that a shotgun was found in a closet during the 1992 raid and an empty gun box was found during the 1998 raid because this evidence was prejudicial, and counsel increased the prejudicial effect when he essentially argued that defendant was potentially homicidal. It is well known that guns are often used in connection with drug trafficking. Cf. *People v Martinez,* 187 Mich App 160, 170-171; 466 NW2d 380 (1991) (a large amount of cash and a gun are sufficient probable cause to search an automobile for contra-

band), remanded on other grounds 439 Mich 986 (1992); *People v Gonzalez,* 256 Mich App 212, 226; 663 NW2d 499 (2003) (the presence of weapons helps to establish that a defendant intended to deliver cocaine rather than merely possess it). Therefore, the evidence with respect to the guns and the gun box was admissible. Moreover, the context of counsel's closing arguments indicated that the reference to the gun found in 2001 was used to further his claim that defendant fled because he possessed knowledge of his tenant's drug dealing and was afraid; he did not imply that defendant was potentially homicidal; rather, he implied that defendant felt the need to protect himself from danger.

Defendant next argues that counsel implied that defendant got away with a crime when counsel asked Webb whether he understood there was a statute of limitations regarding the 1992 offense. From the context of the questions asked, it appeared counsel was attempting to make clear to the jury that defendant was not on trial for the 1992 acts. The 1992 acts had already been ruled admissible, and counsel was merely trying to limit their prejudicial effect. Because the court twice instructed the jury that defendant was not on trial for events that occurred in 1992, and juries are presumed to follow their instructions, *People v Graves,* 458 Mich 476, 486; 581 NW2d 229 (1998), defendant has failed to demonstrate prejudice.

Defendant last argues that counsel was ineffective when he failed to move to dismiss pursuant to *People v Glass (After Remand),* 464 Mich 266; 627 NW2d 261 (2001). Before *Glass* was decided, an indictment by a grand jury did not restrict a magistrate's bindover following a preliminary examination. *People v Baugh (On Remand),* 249 Mich App 125, 126; 641 NW2d 283 (2002). In *Glass,* however, our Supreme Court held that

a defendant did not have a right to a preliminary examination if the defendant was indicted by a grand jury. *Id.* at 129. Because an information must be predicated on a complaint and authorized by either bindover after, or waiver of, a preliminary examination, an information following an improper preliminary examination is void. *Id.*; *Glass, supra* at 277, 283. Therefore, the information in the instant case should have been vacated. Nevertheless, we conclude that proceeding to trial on the information was harmless error.

"[U]nless specifically noted otherwise, all laws applying to prosecutions on indictments also apply to prosecutions by information." *People v McGee,* 258 Mich App 683, 687; 672 NW2d 191 (2003), citing MCR 6.112(A); MCL 750.10; MCL 767.2; *Glass, supra* at 278 n 8, 279. MCL 767.76 essentially provides that a trial court may amend an information before, during, or after trial to conform with the evidence as long as the defendant is not prejudiced in his or her defense. Defendant argues that the indictment only gave him notice of two counts. The original indictment is not contained in the trial court record, and the first amended indictment is unsigned. However, even if defendant was only indicted on the first two counts, the court could have amended the indictment to conform with the evidence, MCL 767.76, and defendant is unable to demonstrate prejudice because he received notice through the amended informations of the charges before trial. "No . . . conviction [shall] be set aside or reversed on account of any defect in form or substance of the indictment . . . ." MCL 767.76. Therefore, defense counsel was not ineffective for failing to move to dismiss.

Defendant next argues that he was denied a fair trial because of prosecutorial misconduct. We disagree.

A claim of prosecutorial misconduct is reviewed de novo. *People v Abraham,* 256 Mich App 265, 272; 662 NW2d 836 (2003). However, an unpreserved issue is reviewed for plain error that affects a defendant's substantial rights. *People v Rodriguez,* 251 Mich App 10, 32; 650 NW2d 96 (2002). Defendant first argues that the prosecutor improperly vouched for the credibility of six witnesses. A prosecutor may not vouch for the credibility of witnesses by claiming some special knowledge with respect to their truthfulness, *People v Bahoda,* 448 Mich 261, 276; 531 NW2d 659 (1995); however, the prosecutor may argue from the facts that a witness should be believed, *People v Thomas,* 260 Mich App 450, 455; 678 NW2d 631 (2004).

Defendant claims the prosecutor improperly bolstered a witness's testimony when she brought up the agreement to resentence the witness in exchange for his truthful testimony, which agreement referred to his consent to a polygraph test and was introduced into evidence. Although a plea agreement should be admitted only with great caution, no error occurs unless the prosecutor uses the agreement to suggest that the government has special knowledge unknown to the jury that the witness testified truthfully. *Bahoda, supra* at 276. Defendant essentially argues that the reference to the polygraph examination in the agreement suggested that the government had special knowledge that Northern had passed the test and was testifying truthfully. Because defendant did not preserve this issue with an objection, it is reviewed under the standard for forfeited nonconstitutional errors set forth in *People v Carines,* 460 Mich 750, 763, 774; 597 NW2d 130 (1999). *People v Nash,* 244 Mich App 93, 96-97; 625 NW2d 87 (2000). It is plain error to present to a jury a reference to taking a polygraph test. *Id.* at 97. To determine whether a

defendant was prejudiced by the improper reference to
a polygraph test, it is useful to consider

> "[']( 1) whether defendant objected to and/or sought a
> cautionary instruction; (2) whether the reference was
> inadvertent; (3) whether there were repeated references;
> (4) whether the reference was an attempt to bolster a
> witness's credibility; and (5) whether the results of the test
> were admitted rather than merely the fact that a test had
> been conducted.' " [*Id.* at 98, quoting *People v Kiczenski,*
> 118 Mich App 341, 347; 324 NW2d 614 (1982), quoting
> *People v Rocha,* 110 Mich App 1, 9; 312 NW2d 657 (1981).]

Defense counsel did not challenge the admission of
the agreement. As a result, the agreement was not
redacted, and no cautionary instruction was given.
Because defendant failed to object, this factor weighs in
favor of the prosecution. *People v Ortiz-Kehoe,* 237 Mich
App 508, 514-515; 603 NW2d 802 (1999). With respect
to the fourth factor, whether the reference was an
attempt to bolster Northern's credibility, the agreement
was proffered to provide the jury with the factual basis
for the witness's bias rather than as evidence that he
testified truthfully, and this factor weighed in favor of
the prosecution.

With respect to whether the reference was inadvert-
ent, the reference to the polygraph test was not the
purpose behind admitting the agreement, so the refer-
ence was less culpable than the reference in *Nash,*
*supra* at 95, 99, in which the prosecutor attempted to
rehabilitate the witness by eliciting the witness's reaf-
firmation for telling the truth. On the other hand, the
prosecution entered into the agreement, and the pros-
ecutor should have been aware that the agreement
contained the polygraph reference. Therefore, the ref-
erence was less inadvertent than the unresponsive
answer to a "yes or no" question in *Ortiz-Kehoe, supra*
at 511, 515. Because the admission of the reference was

within the prosecutor's control, we conclude that this factor weighed in favor of defendant.

With respect to whether the reference was repeated, the reference only appeared once in the agreement. However, the agreement was apparently submitted to the jury along with the other exhibits. In *Nash, supra* at 99-100, this Court noted that testimony referring to a polygraph test was replayed for the jury during deliberations, and found that this constituted a repeated reference. Therefore, because the written reference was likely provided to the jury during deliberations, the reference was likely repeated, and this factor weighs in favor of defendant. *Id.* With respect to the fifth factor, whether the examination results, not just the fact that an examination had been conducted, were submitted to the jury, there was no indication in the record that a test had even been conducted. Instead, the agreement simply indicated that the witness agreed to take the test if the prosecutor requested him to. Hence, the final factor weighs in favor of the prosecution. Given the relatively evenly balanced factors, it is possible that the jury resolved the witness's credibility by relying on the polygraph reference. See *Nash, supra* at 101.

However, unlike the witness in *Nash, supra* at 101, the witness here was not a key prosecution witness involved in the instant charged offenses. Instead, he merely provided evidence that defendant was involved in drugs three years before the occurrence of the circumstances giving rise to the instant offenses. Although this was relevant to defendant's knowledge and intent, the jury could have found that defendant had the requisite knowledge and intent without the testimony because only minimal circumstantial evidence is necessary to prove an actor's state of mind, *McRunels, supra* at 181, and defendant's knowledge and intent

could have been drawn from the fact that drugs were found in a house over which defendant had exclusive control, *Nunez, supra* at 614-615. Therefore, because defendant has not demonstrated that the erroneous admission affected the outcome of the lower court proceedings, the error does not require reversal. *Nash, supra* at 97, citing *Carines, supra* at 763.

With respect to defendant's claim that the prosecutor vouched for Northern during closing argument, the challenged statements clearly indicated that the witness was credible. A prosecutor may argue that a prosecution witness is credible. *Thomas, supra* at 455. Moreover, there is no indication that the prosecutor placed the prestige of her position or her own integrity behind the testimony. See, for example, *Bahoda, supra* at 277 n 26, 281 n 37. Instead, the challenged statements appeared to be general conclusions that, after the court's admonition, the prosecutor supported with facts. Nevertheless, to the extent the statements could have been considered improper vouching, the court's admonition and its instruction to the jurors that it was their responsibility to determine witness credibility were sufficient to cure any prejudicial effect from any error. *Rodriguez, supra* at 31. The remaining claims of vouching for witnesses were unpreserved.[11] Appellate

---

[11] With respect to the alleged improper vouching for police testimony, defendant also appears to argue that the prosecutor misstated the facts when she said that the officers were retired. "A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003), citing *Bahoda, supra* at 282. Of the three officers who testified regarding the 1992 raid, only Officer Webb stated that he had retired from the Pontiac Police Department. However, Officer Casey testified that he had worked for the Pontiac Police Department for 28 years, and that at the time of the trial he was working part-time for the Oakland County Sheriff's Department. And Officer Brown testified that

review of alleged misconduct is precluded absent an objection, unless an objection would not have cured the prejudice. *Id.* at 30, citing *People v Stanaway,* 446 Mich 643, 687; 521 NW2d 557 (1994). And the prejudicial effect of improper vouching could have been cured by an instruction. *Rodriguez, supra* at 31.

Defendant next argues that the prosecutor committed misconduct by commenting on defendant's exercise of his right to remain silent and by shifting the burden of proof. " ' "[I]t is not error to comment on the failure of the defense to produce evidence on a phase of the defense upon which the defendant seeks to rely." ' " *People v Reid,* 233 Mich App 457, 478; 592 NW2d 767 (1999), quoting *People v Fields,* 450 Mich 94, 111 n 21; 538 NW2d 356 (1995), quoting *United States v Bright,* 630 F2d 804, 825 (CA 5, 1980). A defendant's constitutional right to remain silent is not violated by the prosecutor's comment on his silence before custodial interrogation and before *Miranda* warnings have been given. *People v Schollaert,* 194 Mich App 158, 160-161, 164; 486 NW2d 312 (1992). A prosecutor may not comment on a defendant's silence in the face of accusation, but may comment on silence that occurred before any police contact. *People v Goodin,* 257 Mich App 425, 432; 668 NW2d 392 (2003).

"[A] prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the

he had worked for the Pontiac Police Department for 25 years, and that at the time of the trial he was working as a bailiff and security guard for the district court in Waterford. Webb had also testified that he had worked for the Pontiac Police Department for 25 years. It was reasonable to infer, on the basis of the number of years the three officers had worked and the fact that none of the officers still worked for the Pontiac Police Department, that all three officers had retired from the Pontiac Police Department. *Ackerman, supra* at 450.

events were true." *Id.*, citing *People v Lawton,* 196 Mich
App 341, 353; 492 NW2d 810 (1992). Furthermore, a
prosecutor may comment on the inferences that may be
drawn from a defendant's flight. *Goodin, supra* at
432-433. Moreover, attacking the credibility of a theory
advanced by a defendant does not shift the burden of
proof. *People v Callon,* 256 Mich App 312, 331; 662
NW2d 501 (2003), citing *Fields, supra* at 115. Because
the prosecutor's statements were proper commentary
on the weaknesses of defendant's theory of defense, and
they referred to prearrest, pre-*Miranda* warning con-
duct, the statements did not constitute prosecutorial
misconduct.

Defendant next argues he suffered prejudice when
the prosecutor told the jury that it could consider the
MRE 404(b) acts as substantive evidence of guilt. De-
fendant cites *People v Quinn,* 194 Mich App 250; 486
NW2d 139 (1992), as the sole support for his position. In
*Quinn, supra* at 253, this Court stated:

> Where . . . evidence of a defendant's other wrongful acts
> has been admitted for the limited purpose allowed under
> MRE 404(b), the prosecutor deprives the defendant of a
> fair trial in arguing that the jury should consider the
> evidence as substantive evidence of the defendant's guilt.
> *People v Haines,* 105 Mich App 213, 218; 306 NW2d 455
> (1981). See also *People v Vaughn,* 128 Mich App 270,
> 272-273; 340 NW2d 310 (1983). It is not proper for the
> prosecutor to comment on the defendant's character when
> his character is not in issue. See *People v Fredericks,* 125
> Mich App 114, 118; 335 NW2d 919 (1983); *People v Gregory
> Williams,* 57 Mich App 521, 523, n 1; 226 NW2d 547 (1975).

When the challenged comments are read in context,
they clearly indicate that the prosecutor argued that
the MRE 404(b) evidence was relevant to defendant's
knowledge, intent, and scheme, all clearly proper pur-
poses under MRE 404(b). Unlike the prosecutor in

*Quinn, supra* at 252-253, who argued that the evidence was relevant to show the defendant's credibility and character, the prosecutor here did not argue that the evidence was relevant with respect to some improper purpose. Therefore, *Quinn* is distinguishable on its facts, and defendant was not prejudiced by the prosecutor's MRE 404(b) comments.

Defendant next argues that the prosecutor improperly made a civic duty argument. A prosecutor may not make a civic duty argument that appeals to the fears and prejudices of the jurors because this injects issues broader than the guilt or innocence of the accused into the trial. *Bahoda, supra* at 282, 284. Nevertheless, the challenged statement constituted permissible commentary on the evidence and the inferences drawn from the evidence; it did not inject issues broader than the guilt or innocence of defendant into the trial, and no error occurred. *Id.* at 283-285.

Defendant next claims the trial court made four evidentiary errors that denied him a fair trial.[12] We disagree.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *Sabin (After Remand), supra* at 71. The first claim of error is the court's grant of the prosecution's motion to exclude evidence that the 1992 criminal case against defendant

---

[12] Defendant cites two cases with respect to this argument, neither of which is directly on point. In *Coy v Iowa,* 487 US 1012, 1020; 108 S Ct 2798; 101 L Ed 2d 857 (1988), the United States Supreme Court held that placing a screen between a defendant and his victims during their testimony violated the defendant's right to face-to-face confrontation with his accusers. In *Crane v Kentucky,* 476 US 683, 691; 106 S Ct 2142; 90 L Ed 2d 636 (1986), the United States Supreme Court held that circumstances surrounding a confession were admissible to impeach the credibility of the confession, and a blanket exclusion of the circumstances denied the defendant a fair trial.

was dismissed and that the city had settled a civil suit initiated by defendant with respect to the 1992 search. Unless excluded by constitution or court rule, evidence is admissible if it is relevant. MRE 402. Evidence need not be directed at an element of the offense or a defense to be material. *Mills, supra* at 68. A witness's bias is always relevant. *People v Morton,* 213 Mich App 331, 334; 539 NW2d 771 (1995). "[A] defendant is entitled to have the jury consider any fact that may have influenced the witness' testimony." *People v Minor,* 213 Mich App 682, 685; 541 NW2d 576 (1995), citing *People v Mumford,* 183 Mich App 149, 152; 455 NW2d 51 (1990).

Here, evidence that the criminal charges stemming from the 1992 search were dismissed and that the civil case stemming from the 1992 search was settled was arguably relevant to assess the credibility of former Pontiac Police Officers Brown, Webb, and Casey. An appellate court does not determine credibility; it merely ensures that the jurors were given the chance to hear the admissible evidence necessary to make their decision. *People v Snyder,* 462 Mich 38, 44; 609 NW2d 831 (2000). The trial court apparently excluded the evidence because of its potential for confusing the issues or misleading the jury. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Nevertheless, a rule of evidence contravenes the due process right to present a defense if it infringes on a defendant's substantial interest or significantly undermines a fundamental element of his or her defense. *People v Carpenter,* 464 Mich 223, 242-243; 627 NW2d 276 (2001) (KELLY, J, dissenting), citing *United States v*

*Scheffer,* 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998). Here, defendant's defense was that the drugs belonged to his tenant, not him. Therefore, testimony that defendant had previously admitted owning drugs found in the same house significantly undermined defendant's theory of defense.

> "Rebuttal evidence is admissible to 'contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same.' The question whether rebuttal is proper depends on what proofs the [other party] introduced . . . ." [*People v Pesquera,* 244 Mich App 305, 314; 625 NW2d 407 (2001), quoting *People v Figgures,* 451 Mich 390, 399; 547 NW2d 673 (1996).]

By excluding the evidence, the trial court denied defendant the opportunity to impeach the credibility of the officers' testimony that affected a fundamental element of his defense. Therefore, it was arguably error to exclude the evidence. Nevertheless, the exclusion of admissible evidence is subject to a harmless error analysis. *Snyder, supra* at 44-45. The officers' testimony was relevant to defendant's knowledge of the nature of the substances and intent to possess them; however, the prosecution presented evidence that, if believed, demonstrated that defendant had exclusive control over the premises, and it would have been reasonable to infer that defendant knew narcotics were located on the premises. *Nunez, supra* at 614-615. Hence, even if the officers' testimony was discredited, there was sufficient evidence from which a rational jury could have found defendant guilty beyond a reasonable doubt, and the error was arguably harmless. *Graves, supra* at 482.

Defendant's second claim of evidentiary error is that the court improperly permitted testimony with respect to the number of raids that occurred on the same day

his house was raided in 1998. Defendant claims the evidence was highly prejudicial because it suggested that defendant took part in a large conspiracy, and was irrelevant because defendant was not being tried for conspiracy. Plaintiff argues that the evidence was submitted to demonstrate that the numerous raids were well publicized, and that defendant's leaving the jurisdiction demonstrated his knowledge of the raids and, thus, his consciousness of guilt. Because flight is probative of consciousness of guilt, *Compeau, supra* at 598, citing *Coleman, supra* at 4, the evidence was relevant. Although the evidence could have suggested, as defendant claims, that defendant took part in a conspiracy to traffic in drugs, the fact that evidence is admissible for one purpose, but not another, does not make it inadmissible. *Sabin (After Remand), supra* at 56. The weighing of probative value against prejudicial effect is best left to the trial court. *Id.* at 71. Moreover, the trial court exercised its discretion in limiting the prejudicial effect by limiting the extent of the examination. Therefore, the court did not abuse its discretion by permitting the brief testimony with respect to the number of raids that occurred. *Id.*

Defendant's third claim of error is that the court improperly allowed a witness to testify about conversations he had or overheard that involved defendant and drugs. Hearsay is defined as a statement offered by someone other than the declarant to prove the truth of the matter asserted; it is generally inadmissible unless subject to one of the enumerated hearsay exceptions. MRE 801(c) and 802. Our review of the challenged testimony leads to the conclusion that the statements either were not hearsay or were admissible under one of the exceptions. *Fisher, supra,* at 449-450; MRE 803(3) and 801(d)(2)(A). Therefore, no error occurred.

Defendant's fourth claim of error is that the court improperly limited his right to cross-examine a witness about the extent of the bargain he received from the prosecution in exchange for his testimony. Citing *People v Yarbrough,* 183 Mich App 163; 454 NW2d 419 (1990), defendant argues that because Northern thought he could be charged with conspiracy, his belief was relevant and "fair game" for cross-examination. In *Yarbrough, supra* at 165, which, incidentally, was decided before November 1, 1990, and is not binding on this Court under MCR 7.215(J)(1), this Court noted that a witness could be questioned about an arrest not resulting in a conviction when

> [t]he evidence is being offered to show the witness' interest in the matter, his bias or prejudice, or his motive to testify falsely because that witness has charges pending against him which arose out of the same incident for which defendant is on trial.

In the instant case, Northern was not facing charges that arose out of the same incident for which defendant was on trial. In fact, Northern testified that he was in prison when the 1998 raid occurred. Therefore, the exception to the general rule that a witness cannot be questioned about arrests not resulting in convictions did not apply. See *Yarbrough, supra* at 164-165. The right to confront witnesses does not include the right to cross-examine on any subject. *People v Hackett,* 421 Mich 338, 347; 365 NW2d 120 (1984). The trial court has discretion to exclude evidence that might confuse issues or mislead the jury. *Id.* at 351. The trial court in this case essentially determined that the legal issues with respect to the uncharged conspiracy offense would mislead the jury. In *People v McIntire,* 232 Mich App 71, 101-103; 591 NW2d 231 (1998), rev'd on other grounds 461 Mich 147 (1999), this Court found that the defen-

dant was not denied his right to confrontation or his due process right to cross-examine a witness when the trial court precluded him from exploring plea negotiations with respect to a charge of manslaughter that was not part of the final plea agreement.

Nevertheless, defendant argues that Northern *could* have been charged with conspiracy. Citing *People v Ish,* 252 Mich App 115, 117; 652 NW2d 257 (2002), defendant argues that, under the *corpus delicti* rule, the prosecution need not present evidence of every element of the offense, and a confession may be used to elevate the offense to a higher degree. And citing *Konrad, supra* at 270, defendant argues that the *corpus delicti* of a drug offense is that the drug existed and someone possessed it. *Ish* involved an appeal of a first-degree home invasion conviction, *Ish, supra* at 116, and although the defendant in *Konrad* was convicted of both possession with intent to deliver and conspiracy to possess cocaine, his appeal only involved the possession count, *Konrad, supra* at 268-269. Unlike the offenses in *Ish,* the conspiracy offense here was not merely an elevated degree of the possession offense of which Northern was convicted. "[C]onspiracy is separate and distinct from the substantive crime that is its object." *Mass, supra* at 632. Therefore, defendant's argument is not persuasive.

Affirmed.