*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

VITONN LAVELL BALDWIN,

Defendant-Appellant.

UNPUBLISHED
August 20, 2019

No. 343203
Oakland Circuit Court
LC No. 2017-262485-FH

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

Armed with a warrant, Oakland County Sheriff's Department officers searched a home and vehicle associated with defendant Vitonn Lavell Baldwin. The search yielded copious quantities of cocaine and heroin and several firearms. Sergeant Douglas Stewart participated in the search and testified as an expert witness at Baldwin's trial. A jury convicted Baldwin of possession with intent to deliver both substances and felony weapon offenses. Baldwin's principal argument on appeal is that the prosecution violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to disclose that Sergeant Stewart had a sexual relationship with a defendant in an unrelated case. That transgression did not come to the prosecutor's attention until after Baldwin's conviction, however, and therefore does not fall within *Brady*'s reach. Baldwin's remaining claims also lack merit. We affirm.

## I. BACKGROUND

This case arises from a narcotics investigation launched by the Oakland County Sheriff's Department, culminating in a search warrant for defendant's vehicle and a residential home located at 66 Lincoln Street, Pontiac. During a preraid surveillance of the Lincoln home, which belonged to defendant's sister, the police watched as defendant entered the home, remained inside for a time, and then drove away. The police followed defendant and pulled him over. The search of defendant's car and person revealed two clear plastic sandwich bags containing cocaine in defendant's left coat pocket, $584 in cash, and a cell phone containing numerous text messages indicative of drug trafficking.

In the kitchen of the Lincoln home, the officers found two grams of cocaine and an abundance of items suggesting drug trafficking. The kitchen search also yielded several items tying defendant to the home, including documents, identification cards, photographs, and a receipt. Inside a Timberland boot on the back porch, officers found 159 grams of cocaine and two grams of heroin. At trial, Sergeant Stewart testified that the quantity of narcotics and the items in the home were consistent with an intent to deliver the contraband.

The jury found defendant guilty of possession with intent to deliver 50 to 449 grams of cocaine, MCL 33.7401(2)(a)(*iii*), possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), three counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b, and being a felon in possession of a firearm (felon-in-possession).

## II. *BRADY* VIOLATION

Defendant argues that the prosecution's failure to disclose Sergeant Stewart's affair constituted a *Brady* violation, denying his right to discovery and cross-examination and potentially constituting prosecutorial misconduct. Generally, we review de novo due process allegations connected with *Brady*, *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016), claims involving a defendant's constitutional right to present a defense, *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009), and issues of prosecutorial misconduct. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). However, defendant failed to preserve this issue for appellate review by raising it below, see *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016), limiting our review to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Sergeant Stewart supervised the investigation of defendant, as well as the search of the Lincoln home. He also participated in the traffic stop that led to defendant's arrest. At trial, Sergeant Stewart testified as an expert in street level drug trafficking. After defendant's trial ended, the Oakland County Sheriff's Office learned of an extramarital affair between Sergeant Stewart and a defendant in an unrelated case. Sergeant Stewart arrested the woman in August 2011 during a large-scale heroin smuggling investigation. In 2012, she and Stewart began a sexual relationship. The woman was sentenced to federal prison in March 2014, but continued to communicate with Stewart, who sent her letters and gave her approximately $400 every two weeks while in prison. After the woman was released from prison in July 2016, her relationship with Sergeant Stewart resumed. The woman reported to the Oakland County Sheriff's Office that she was not coerced into having a sexual relationship with Sergeant Stewart, and that he had not used his position of authority to engage her in sex. The affair ended in November 2017.

Defendant argues that if he had known about the affair, he could have impeached Sergeant Stewart's credibility with evidence of his unethical and unprofessional relationship. And if the jury became aware of Sergeant Stewart's misconduct, defendant alleges, likely he would have been acquitted.

A *Brady* violation occurs when "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "The government is held responsible for evidence within its control, even

evidence unknown to the prosecution, without regard to the prosecution's good or bad faith[.]" *Id*. (cleaned up).[1] "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. at 150-151 (cleaned up).

Defendant has failed to establish a *Brady* violation, primarily because the prosecution did not suppress or withhold evidence. Defendant's offers of proof establish that the Oakland County Sheriff's Office became aware of the affair on February 8, 2018, after defendant's jury trial was completed. There is no evidence to support that the Oakland County Sheriff's Office or the prosecution suspected or had any reason to suspect Sergeant Stewart's malfeasance before or during defendant's trial. Thus, defendant has failed to present evidence that the government suppressed evidence.

Defendant also failed to establish the second prong of a *Brady* violation. Extrinsic evidence of Sergeant Stewart's affair with a woman in the unrelated narcotics case most likely would not have been admitted at trial, had it come to light at that time. While information that is exculpatory or impeaching may be favorable to a defendant, information regarding Sergeant Stewart's affair would not have been admissible as impeachment evidence under MRE 608(b). MRE 608(b) provides:

> **(b) Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Specific instances of Sergeant Stewart's conduct could have been inquired into only if probative of truthfulness or untruthfulness. MRE 608(b). Defendant does not contend that the evidence of Sergeant Stewart's affair is evidence of untruthfulness, but rather that it demonstrates unethical and unprofessional conduct. Defendant has not explained how evidence of the affair would have undermined Sergeant Stewart's credibility as an expert witness. Sergeant Stewart's illicit relationship was unconnected to defendant, and no evidence surrounding the affair calls into question his credibility as an expert in narcotics trafficking.

---

[1] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

Furthermore, even if evidence of Sergeant Stewart's affair had been presented to the jury, defendant has failed to establish a reasonable likelihood of a different outcome. Sergeant Stewart testified as an expert with more than 20 years of experience investigating street level drug trafficking, and offered opinions connecting defendant to the packaging and distribution of heroin and cocaine. These opinions would not have been substantially weakened by evidence that he maintained a secret sexual relationship with a defendant in an unrelated case. Sergeant Stewart's extramarital affair has no bearing on his qualification or credibility as an expert, and does not tend to establish any bias against defendant.

Notably, defendant has not challenged the legitimacy of Sergeant Stewart's central thesis: that given the amount of contraband at the Lincoln home and the accompanying devices and materials, the possessor likely had an intent to deliver. Defendant challenges only the conclusion that *he* was the possessor. Defendant has not explained how evidence of the affair would have weakened Sergeant Stewart's opinions that the Lincoln home was a center for drug processing and distribution, and therefore a reasonable probability that the outcome of his trial would have been different had the evidence been admitted.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next contends that the prosecution failed to prove the possession element of all six of the charges for which he was convicted. We review de novo challenges to the sufficiency of the evidence, *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002), considering "whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror in finding that the essential elements of the crime were proved beyond a reasonable doubt." *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011).

## A. POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE

Because we apply the same analysis to determine whether the prosecution presented sufficient evidence to prove possession with intent to deliver cocaine or heroin, we will address defendant's narcotics convictions together.

> To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it. [*People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005).]

Defendant insists that insufficient evidence supports the jury's finding that he possessed the narcotics in the Lincoln home. "The element of knowing possession with intent to deliver has two components: possession and intent." *Id.* Defendant does not dispute any element other than possession. "Actual physical possession is not required to meet the possession element. Instead, possession may be either actual or constructive." *Id.* "Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Dominion or control over the object need not be exclusive." *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010) (cleaned up). "The test for constructive possession is

whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012) (cleaned up). "Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of possession." *McGhee*, 268 Mich App at 623. "Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required." *Id.*

The prosecution presented sufficient evidence for the jury to find that defendant possessed the cocaine and heroin. During a preraid surveillance, Sergeant Stewart and Detective Skomski observed defendant arriving at the Lincoln home. Approximately 15 minutes later, defendant left the Lincoln home and was pulled over by the same officers. They found two separate bags of cocaine and $584 in cash on his person. Defendant also had two cell phones, one of which contained text messages that Sergeant Stewart testified were consistent with drug trafficking. His text messages contained references to the sale of narcotics, amounts, weights, and costs, including multiple conversations in which other individuals asked defendant such questions as "what can you do for 200," "I need a 40," "What will you given me for 160," "How much a g," "How much for 4 gs," "Can I grab a 100 of the good stuff," "What's the ticket on a g of the OK stuff." In response to these questions, defendant answered with either a price or a weight. There are also multiple references to a "ball." Sergeant Stewart testified that a "ball" is a common term for a ball of cocaine. There are also multiple conversations in which defendant and the other person discuss meeting at specified locations.

The Lincoln home was searched after defendant's arrest, and the police found between 160 and 170 grams of cocaine inside. In the kitchen, Detective Skomski found two grams of cocaine in a cabinet, a digital scale with white residue, a razor blade, dietary supplement, and large freezer bags. Photographs of defendant, two of defendant's identification cards, and a receipt bearing defendant's name were also found in the kitchen. Moreover, approximately 100 documents belonging to defendant were found in the home. Pieces of mail belonging to defendant's sister were also in the home, but there were no documents belonging to any other individual. Sergeant Stewart testified that razor blades are often used to cut narcotics, dietary supplement is often mixed with cocaine to create more cocaine, large freezer bags are often used to store large quantities of narcotics, and digital scales are often used by narcotics traffickers but not drug users. Small bags were also found in the kitchen, which are often used by narcotics traffickers to package narcotics for sale. The small bags matched the bags containing cocaine found on defendant when he was arrested.

On the back porch of the Lincoln home, an officer found 159 grams of cocaine and two grams of heroin inside a size 9 Timberland boot. In a room located off of the back porch, multiple boxes of men's shoes were found that were either a size 9 or 9½, and pants size 32 and 34 were also found near the shoes. Defendant wore a size 9 or 9½ shoe; defendant's pant size also matched the pants found in the Lincoln home. This evidence amply sufficed for the jury to find that defendant possessed the narcotics in the Lincoln home.

Jail calls in which defendant discussed things being kept or placed in shoes added to the picture. During one of the phone calls, defendant asked the woman on the other line whether she saw the "stuff inside the shoes." In another phone call defendant requested that a woman put something in a "shoe behind the TV." Defendant also discussed something being placed in a bag under the car, stating that "it been in a bag under the car though and ain't no water get up under

the car . . . and I just put it under the car when they raided." On another call, defendant discussed a "cat" being found in a black bag, and the contents of the black bag being flushed down the toilet; defendant stated that the person who flushed the contents down the toilet is "stupid," but the contents in the bag were only worth about $300. Based on the jail calls, a reasonable jury could infer that defendant possessed the contraband found in the Lincoln home.

## B. FELON-IN-POSSESSION

The elements of felon-in-possession are: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). At trial, the parties stipulated that defendant previously had been convicted of a specified felony that made him ineligible to legally possess a firearm or ammunition. "Possession of a firearm can be actual or constructive, joint or exclusive." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). "Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." *Minch*, 493 Mich at 92 (cleaned up). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Johnson*, 293 Mich App at 83 (cleaned up).

Defendant argues that he did not possess the firearms found in the backyard of the Lincoln home because that residence belonged to his sister. (Defendant claimed to reside at a home on Liberty Street in Pontiac.) There was sufficient evidence to establish a nexus between defendant and the firearms. Based on the evidence linking defendant to the Lincoln home—100 documents bearing defendant's name, defendant's identification cards, a receipt with defendant's name, photographs of defendant, and clothing and shoes matching defendant's size—a jury could reasonably infer that defendant either lived or spent a good amount of time at the Lincoln home. The large quantity of narcotics found at the home, the drug paraphernalia, the text messages, and the fact that defendant had narcotics on his person after leaving the Lincoln home, support a reasonable inference that defendant used the Lincoln home to traffic narcotics, despite that the Lincoln home was not his legal address. Sergeant Stewart testified that it is common for drug traffickers to have more than one address in an effort to prevent law enforcement from discovering the distribution location, and that traffickers often have firearms available to protect their supply of drugs. That two of the guns were loaded signified that they were ready to be used. Based on this evidence, a reasonable jury could find a nexus between defendant and the firearms, and could determine that defendant had dominion and control over the firearms.

## C. FELONY-FIREARM

The jury convicted defendant of three counts of felony-firearm. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Bass*, 317 Mich App at 268-269 (cleaned up). The predicate felonies in this case were the possession with intent to deliver 50 to 449 grams of cocaine, possession with intent to deliver less than 50 grams of heroin, and felon-in-possession. As discussed above, there was sufficient evidence for the jury to find that defendant possessed the cocaine, heroin, and firearms found in the home. Therefore, sufficient evidence was presented to support the three predicate felonies for the three felony firearm convictions.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 Brief, defendant argues that trial counsel provided ineffective assistance of counsel because he failed to call key witnesses, failed to present evidence of defendant's medical marijuana card to explain the content of the text messages on defendant's cell phone, and failed to present the argument that defendant was not the lessor or owner of the Lincoln home. "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Solloway*, 316 Mich App at 187-188. Because no factual record was created in regard to defendant's claims of ineffective assistance of counsel, our review is limited to mistakes apparent on the record. *Id.*

To prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (cleaned up). There is also a "strong presumption that counsel's performance was born out of sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This presumption can only be overcome by a showing of counsel's failure to perform an essential duty, which failure was prejudicial to the defendant." *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). However, "trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

### A. FAILURE TO CALL WITNESSES

Defendant argues that trial counsel was ineffective for failing to call defendant's probation officers, Mrs. Saunders-Wright and Mr. Anderson-Smith. Defendant contends that both Saunders-Wright and Anderson-Smith made random visits to the Liberty home, and could have verified that defendant was present at the Liberty home every time they visited. Specifically, defendant asserts that Saunders-Wright could have testified that between March 19, 2016 and March 19, 2017, defendant was confined to the Liberty home because he was placed on a home confinement tether.

Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Trial counsel's failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-55. However, "decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (cleaned up). "This presumption can only be overcome by a showing of counsel's failure to perform an essential duty, which failure was prejudicial to the defendant." *Hampton*, 176 Mich App at 385. "Furthermore, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Dixon*, 263 Mich App at 398. A

substantial defense is one that affects the outcome of the trial. *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994).

Defendant did not provide an affidavit or offer of proof establishing what his probation officers would have testified to or whether his probation officers had information that would have been favorable to the defense. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Moreover, defendant has failed to overcome the burden that trial counsel's decision not to call his probation officers was a matter of trial strategy. Defendant was supposed to be confined to the Liberty home with a tether between March 19, 2016 and March 19, 2017; however, defendant was seen entering and exiting the Lincoln home on February 16, 2017, and then pulled over and arrested with cocaine. Trial counsel may not have wanted the jury to know that defendant was on probation and on home confinement at the time of his arrest for fear that this information would be prejudicial to his defense.

Defendant also contends that defense counsel was ineffective for failing to call Akeyra Baldwin, [2] who lived at the Lincoln home, and who would have testified that defendant did not place the drugs in the home or the firearms in the backyard. Defendant also contends that Akeyra would have testified that the clothes in the home belonged to her boyfriend and not defendant. Again, defendant has not presented an affidavit or offer of proof that Akeyra would have provided this testimony. Defense counsel was aware that defendant's sister owned and lived at the Lincoln home; defense counsel made reference to defendant's sister's ownership of the home during trial and set forth the argument that the clothing in the home could have belonged to someone else, namely the boyfriend of defendant's sister. Thus, trial counsel was aware that this was a possible defense, but nevertheless did not call Akeyra to testify. Defendant has failed to overcome the presumption that it was a matter of trial strategy not to call her to testify. Thus, defendant has failed to meet his burden of proving that trial counsel's decision not to present Akeyra's testimony fell below an objective standard of reasonableness.

## B. FAILURE TO PRESENT EVIDENCE

Defendant argues that trial counsel was ineffective for failing to admit defendant's medical marijuana card into evidence to explain the drug references in his text messages. Decisions regarding what evidence to present are presumed to be trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy[.]" *Id*. It is unclear from the record whether trial counsel was aware that defendant had a medical marijuana card. Defendant has not provided evidence that he did in fact have a medical marijuana card at the time of his arrest. If a card existed, defendant has failed to overcome the presumption that it was trial strategy not to introduce evidence of it. In the Lincoln home, officers found marijuana in a box along with documents bearing defendant's name. Trial counsel could have feared that defendant's access to

---

[2] Defendant does not identify Akeyra as his sister in his Standard 4 Brief. We presume that Akeyra is defendant's sister because she lived at the Lincoln home.

marijuana might connect him to the Lincoln home, supporting that defendant possessed the other drugs found there. Defendant also failed to establish that trial counsel's failure to admit defendant's medical marijuana card was outcome determinative. Sergeant Stewart testified that the text message conversations were characteristic of drug dealing, not simply drug use, because there were references to the sale of narcotics, weights, amounts, and costs. The text messages contained references to cocaine, and defendant was arrested with two separate bags of cocaine on his person, which Sergeant Stewart testified was characteristic of drug dealing. Evidence that defendant could legally obtain marijuana would not have explained the references to cocaine or narcotics trafficking found in his text messages, or that he was arrested carrying cocaine in two separate bags. Thus, defendant has failed to establish that trial counsel was ineffective for failing to introduce defendant's medical marijuana card.

## C. FAILURE TO ARGUE THAT DEFENDANT WAS NOT THE LESSOR OR OWNER OF THE LINCOLN HOME

Defendant argues that trial counsel should have argued that he was not the lessor or owner of the Lincoln home. Defendant's argument is without merit. Trial counsel advanced the theory that defendant was not in possession of the narcotics or firearms because the Lincoln home was not his residence.

During trial, counsel questioned Detective Skomski about the address found on defendant's identification cards, and elicited testimony that the identification cards stated that the Liberty home was defendant's address. Trial counsel questioned Detective Skomski about searching the Liberty home, and established that the Liberty home contained nothing of evidentiary value. Trial counsel questioned another detective about the size of the clothing found in the Lincoln home, and inquired whether the clothes could have belonged to other men. Counsel elicited testimony that nothing on or in the clothing suggested defendant's ownership. Trial counsel also implied that it is common for individuals to receive mail at another person's home.

During closing arguments, counsel argued that the evidence was insufficient to establish that defendant lived at the Lincoln home. Therefore, even if trial counsel did not use the specific words "owner" or "lessor," he set forth the argument that defendant did not live in the Lincoln home, and that insufficient evidence established that he possessed the narcotics and firearms. Even if trial counsel erred by not specifically using the terms "lessor" or "owner," the jury likely understood that trial counsel was arguing that defendant did not own or reside in the home and therefore did not possess the narcotics or firearms. Thus, any failure to use the words lessor or owner was not outcome determinative.

We affirm.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle