*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEFFREY DAVID CRAIG,

        Defendant-Appellant.

UNPUBLISHED
September 1, 2022

No. 357052
Huron Circuit Court
LC No. 19-306444-FH

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of assault with a dangerous weapon (felonious assault), MCL 750.82(1).[1] Defendant was sentenced to serve 90 days in jail and 24 months of probation. Defendant alleges two issues in his appeal. First, defendant alleges that the assistant prosecutor (APA) shifted the burden of proof by implying that defendant kept an important witness from the jury. Defendant also alleges that his trial counsel was ineffective for failing to object to this "burden shifting" and as a consequence defendant was denied a fair trial. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises out of an incident at a family gathering in July 2019 between defendant and defendant's sister's boyfriend, RE, on the back porch and in the front yard of defendant's family home. Several people were at the family gathering in addition to defendant and RE, including defendant's mother, defendant's father, defendant's sister, defendant's girlfriend, and two close family friends, LB and BB.

As with most family brawls, there were varying accounts presented to the jury as to what happened at defendant's home. RE testified that he saw defendant and BB yelling at each other and getting "in each other's face" on the back porch. When defendant's mother tried to separate

---

[1] The jury acquitted defendant of one charge of domestic violence, MCL 750.81(2).

them, defendant threw his mother out of the way. RE went on the porch and got in between BB and defendant. RE was "pretty sure" defendant "swung" at him first but missed. RE then "swung" at defendant and hit him on the side of his face. After defendant and RE were separated, RE went inside the house and defendant went to the front of the house. RE saw defendant and his sister arguing in the front of the house and went outside. While defendant was standing next to the passenger front tire of RE's truck, RE heard defendant's sister say, "No, [defendant], you're not gonna slash his tires," to which RE responded, "Yeah, that's right, you're not gonna slash my tires." Defendant then turned around, pointed a four- to five-inch-long knife at RE and said, "Yes, I am, . . . [a]nd I'm gonna slash your throat next." Defendant began approaching RE with the knife pointed up. RE walked back to the house and called 911.

Defendant presented the jury with a different version of events. Defendant testified that while he was "[h]orsin' around" with BB on the back porch, his mother and LB told them to settle down. Defendant's mother tried to break the two of them up and "got knocked over" in the process. Defendant denied he intentionally pushed her. RE then came onto the porch and hit defendant in the head. Defendant further testified that when he was standing next to RE's truck, defendant threatened to slash RE's tires to get him to come outside so the two of them could have a fair "fist fight." RE came outside and heard defendant threaten to slash RE's tires while RE was standing 30 feet away from defendant. Defendant denied threatening to slash RE's throat.

Then there was the testimony of defendant's mother and LB. Both testified that they did not hear defendant threaten to slash RE's throat, but only heard defendant threaten to slash RE's tires. Further, defendant's mother testified that defendant did not push her or lay a hand on her on the back porch, a claim that was directly rebutted by a Port Austin police sergeant who testified that defendant's mother informed her directly after the incident that defendant pushed her on the back porch. This sergeant also testified that she spoke to all of the witnesses at the home except for BB because she did not see BB at the scene of the incident and no other witnesses mentioned his name to her during their interviews.

Defendant was convicted and sentenced as stated above. This appeal ensued.

## II. ANALYSIS

### A. PROSECUTORIAL MISCONDUCT

As previously alluded to, defendant begins his appeal by alleging that the APA impermissibly shifted the burden of proof when cross-examining defendant by implying that defendant withheld information about a potential witness, BB, from the police and the jury.

As will be more thoroughly discussed *infra*, defendant failed to contemporaneously object and request a curative instruction to preserve his claim of prosecutorial misconduct, and therefore, this issue is not preserved. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights." *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Whether a plain

error affects a defendant's substantial rights requires showing of "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *People v Brown*, 294 Mich App 377, 382-83; 811 NW2d 531 (2011). Whether a prosecutor committed misconduct depends on "whether the defendant was denied a fair and impartial trial." *Id.* at 382. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020) (quotation marks and citation omitted). "[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001) (quotation marks and citation omitted; alteration in original). Further, "a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). However, "attacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).

During defendant's cross-examination, the APA asked defendant about a statement he made to the police directly after the incident, in which defendant stated he did not know what led to RE hitting him on the porch. Specifically, the APA asked, "Now, do you remember telling [a police officer], there, that, 'I don't even know what really led to it, but I remember standing there talking like this and getting punched in the side of the head?'" Of note, defendant's earlier testimony indicated that defendant and BB's "horseplay" led to RE hitting defendant. Defendant responded, "Yes, I do, because, at the time, I didn't mention [BB] in the picture. There was—none of that was revealed to the arresting officer." The APA asked defendant why no one informed the police that BB was there, to which defendant responded:

> *Defendant*. I'm not a—I'm not sure of them [sic] reasons.
>
> *APA*. But he was a witness to what had happened, right?
>
> *Defendant*. He was there, yes, obviously. That's who I had the altercation with playing around.
>
> *APA*. And he could be an important witness to tell her what he saw, correct?
>
> *Defendant*. Possibly, yes.
>
> *APA*. But no one told her that he was there, true?
>
> *Defendant*. Correct.

From this line of questioning we cannot conclude that the APA committed misconduct. Rather, this line of questioning suggests that the APA was asking defendant about his prior inconsistent statement. Initially, the APA asked defendant about his statement to the police that he did not know what prompted RE to hit him, presumably in an effort to point out inconsistencies with defendant's trial testimony that his "horseplay" with BB led to RE hitting him. However, when defendant voluntarily stated that he did not tell police about BB during his initial statement, the APA asked logical and relevant follow-up questions regarding why defendant failed to inform the police about BB, a potential witness, given that BB's involvement related to defendant's theory of why RE hit him. Because an attempt to attack the credibility of a defendant's theory of defense does not shift the burden of proof, the APA's questions here did not shift the burden of proof to defendant and were permissible. See *McGhee*, 268 Mich App at 635. Therefore, we discern no error and defendant is not entitled to relief on this issue.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that defense counsel was ineffective for failing to object to the APA's cross-examination of defendant, and but for this error, there was a reasonable probability that the result of trial would have been different.

Defendant failed to move for a new trial or an evidentiary hearing to preserve his claim of ineffective assistance of counsel, and therefore, this issue is not preserved for appellate review. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Because defendant did not preserve this issue, this Court's review is limited to mistakes apparent from the record. See *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

A criminal defendant's right to a fair trial is protected by the United States and Michigan constitutions, US Const, Am VI; Const 1963, art 1, § 17, and includes the right to effective assistance of counsel, *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). A trial counsel's performance is objectively deficient if it falls below an objective standard of reasonableness. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). "If counsel's strategy is reasonable, then his or her performance was not deficient." *Randolph*, 502 Mich at 12. Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel. *People v Zitka*, 335 Mich App 324, 341; 966 NW2d 786 (2020). A defendant is prejudiced by trial counsel's deficient performance when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different. *Randolph*, 502 Mich at 9.

Here, defense counsel's failure to object to the APA's cross-examination did not amount to ineffective assistance of counsel. As discussed *supra*, the APA's cross-examination of defendant was proper, and therefore, any objection to this would have been futile. Because failure to make a futile motion does not constitute ineffective assistance, *Zitka*, 335 Mich App at 341, defendant's argument fails.

Even if we were to presume the APA's questioning error and trial counsel was ineffective for failing to object, defendant has not demonstrated that there was a reasonable probability that

but for defense counsel's failure to object, the verdict would have been different. *Id*. The challenged testimony was not directly relevant to whether defendant came at RE with a knife and threatened to cut his throat. Further, the questioning at issue addressed what occurred prior to defendant being hit on the porch and was thus only relevant to impeach defendant. Therefore, even if the APA's cross-examination was improper, defendant has failed to establish that he was prejudiced, and accordingly, his claim of ineffective assistance of counsel fails. *Randolph*, 502 Mich at 9. Accordingly, defendant is not entitled to relief on this issue.

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica