*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEPHON NICHOLAS MCGEE-COVES,

Defendant-Appellant.

UNPUBLISHED
September 08, 2025
9:23 AM

No. 370916
Wayne Circuit Court
LC No. 23-002689-01-FC

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to commit great bodily harm (AWIGBH), MCL 750.84, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 6 to 10 years' imprisonment for AWIGBH and two years' imprisonment for felony-firearm. We affirm.

## I. BACKGROUND

In the early morning hours of April 28, 2023, Javon Jones, who was staying with Iyana Thorne in her apartment, was awakened by the apartment buzzer. When Jones looked outside to see who buzzed, he saw defendant—who shared a child with Thorn—enter his vehicle and leave. Jones left the apartment shortly thereafter, and while leaving, he was confronted by defendant, who was armed. Defendant accused Jones of "fucking up my family," then shot Jones. Jones managed to run away, and defendant chased him, continuing to shoot. Defendant shot Jones four times in total. Defendant was arrested shortly after the shooting.

While defendant was in jail awaiting trial, his outgoing mail was flagged, and officials discovered that defendant was writing to Thorne, trying to coach her testimony. The jury convicted defendant as stated above. At defendant's sentencing, the trial court imposed an upward-departure sentence, reasoning that the OVs did not adequately account for the severity of defendant's conduct underlying his offense or his postarrest conduct of trying to tamper with a witness.

This appeal followed.

-1-

## II. OTHER-ACTS EVIDENCE

Defendant first argues that he was denied a fair trial when, during the prosecutor's direct examination of Thorne, the prosecutor questioned Thorne about other wrongful acts that defendant had committed. Defendant alternatively argues that his trial counsel was ineffective for not objecting to the prosecutor's questioning and requesting a mistrial.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a claim of prosecutorial misconduct, the defendant must contemporaneously object to the contested conduct and request a curative instruction. *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020). Defendant here did neither, so this issue is unpreserved.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or request a *Ginther*[1] hearing. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant did neither of these things with respect to this issue, so it, too, is unpreserved.

Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). To be entitled to relief under the plain-error standard, the defendant must show that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Whether a defendant has been denied the effective assistance of counsel ordinarily presents a mixed question of fact and law—factual findings are reviewed for clear error, and the question of whether those facts establish that the defendant's right to counsel was violated is reviewed de novo. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021). But where, as here, the defendant failed to obtain an evidentiary hearing, there are no factual findings to review, and this Court's review is limited to mistakes apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); *Haynes*, 338 Mich App at 429.

### B. ANALYSIS

Defendant's argument focuses on the following exchange that took place during the prosecution's direct examination of Thorne, in which the prosecutor asked Thorne about other wrongful acts that defendant had committed, and the trial court sua sponte stopped the line of questioning and instructed the jury to not consider the improper testimony:

> *Q*. Ms. Thorne, had the Defendant Mr. McGee-Coves ever shot at you before?
>
> *A*. Yes.

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

*Q*.  Have you known him to carry a weapon on him?

*A*.  No, not, like, a big one, no.

*Q*.  Have you ever seen him with a gun?

*A*.  Yes.

*Q*.  Okay.  Ms. Thorne you indicated [that you moved to a new apartment because] you were running from him, correct?

*A*.  Yes.

*Q*.  Okay.

*Ms*. *Carmona* [prosecutor]:  Judge, I'm going to skip ahead to 7:30 [in a recorded interview of Thorne] for the record.

*The Court*:  Will the parties approach?

*Prosecutor*:  Yes, Judge.

(Discussion off the record at 9:45 a.m.)

(Back on the record at 9:46 a.m.)

*The Court*:  I do believe I have an obligation to let the jury know that they're to disregard the answer that, um—I don't believe it's relevant, there was no proper motion filed as to a previous—whether or not he had a gun is a separate issue.  That question was answered and that can be allowed.  But there is no notice or anything of that sort with regard to any type of information of any prior act.  So I am not going to allow testimony of the fact that Mr. McGee-Coves shot at this witness.  That's not relevant.  This jury is to not take that into account in any way.

*Prosecutor*: Thank you, Judge.

Defendant argues that the prosecution's asking Thorne about other-acts evidence— whether defendant had previously shot at her and whether she knew defendant to carry a gun— amounted to prosecutorial misconduct.  In support of this claim, defendant spends most of his argument explaining why such other-acts evidence was inadmissible.  But, as shown above, there is no error to review in this respect because the trial court *already ruled* that evidence about defendant's other acts was inadmissible.  As far as defendant's broader prosecutorial-misconduct argument goes, that argument fails because the trial court promptly identified the prosecutor's misconduct and corrected it by giving a curative instruction—the same remedy to which defendant would have been entitled had he objected to the prosecutor's conduct when it occurred.  This Court generally "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect," *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008), and, here, the trial court in fact gave a curative instruction.  In such circumstances, defendant must, at

a minimum, explain why the curative instruction was insufficient to cure any prejudicial effect. This is no easy task since "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Id*. Unfortunately, defendant does not even confront this difficult task—he wholly fails to explain why the trial court's curative instruction was insufficient to cure the prejudicial effect of the prosecutor's misconduct. Defendant is therefore not entitled to appellate relief on his prosecutorial-misconduct claim.

Turning to defendant's ineffective-assistance claim, to be entitled to relief, defendant must show that (1) his trial counsel performed objectively unreasonably and (2) but for his trial counsel's unreasonable performance, there is a reasonable probability that the outcome of his trial would have been different. *Haynes*, 338 Mich App at 429.

Assuming without deciding that defendant's trial counsel's failure to immediately object to the prosecution's improper questioning fell below an objective standard of reasonableness, defendant cannot establish that he was prejudiced by this performance. As explained above, had defendant's trial counsel objected and the trial court sustained the objection, the remedy to which defendant would be entitled was a curative instruction, which the trial court already provided.

Defendant contends that he was prejudiced because his trial counsel likely would have been granted a mistrial due to the prosecutor's error if his counsel requested one, but a mistrial is only granted when an error "is so egregious that the prejudicial effect can be removed in no other way." *People v Caddell*, 332 Mich App 27, 37; 955 NW2d 488 (2020). In *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011), the case "turn[ed] entirely on the jury's credibility determinations," and an officer improperly "testified that the victim had stated that she screamed and that the neighbors had said they heard screaming." In response, the court struck the statements and instructed the jury to disregard them. *Id*. This Court held that, on such facts, there was no error requiring reversal because "it is presumed that instructions cure most errors." *Id*.

The facts here are highly similar to *Mahone*—the jury heard improper testimony, in response to which the trial court ruled that the testimony was inadmissible and instructed the jury to disregard it. Such instructions are presumed to cure most errors, and defendant fails to explain why the other-acts evidence that the jury improperly heard was the type that is so prejudicial that the immediate curative instruction was not enough to remedy the error. The improper testimony was short, the trial court identified the improper testimony swiftly and immediately gave a curative instruction, and the inadmissible evidence was never mentioned again during trial. This was simply not the type of egregious error that would warrant a mistrial, and defendant's trial counsel was not ineffective for failing to make a futile motion for a mistrial. See *People v Dixon-Bey*, 321 Mich App 490, 516; 909 NW2d 458 (2017).

Accordingly, while we do not condone the prosecution's improper questioning about defendant's other acts, neither defendant's prosecutorial-misconduct argument nor his ineffective-assistance argument premised on the prosecution's improper questioning warrants appellate relief.

III. SHIFTING BURDEN OF PROOF

Next, defendant contends that the prosecutor committed misconduct when, during rebuttal closing argument, she impermissibly shifted the burden of proof to the defense.

## A. PRESERVATION AND STANDARD OF REVIEW

Like defendant's previous claim of prosecutorial misconduct, defendant failed to object to the prosecutor's statements allegedly shifting the burden of proof to the defense, so this issue is unpreserved. See *Evans*, 335 Mich App at 88. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *Bennett*, 290 Mich App at 475.

## B. ANALYSIS

In every criminal case, the prosecution has the burden of proving the elements of the charged offense beyond a reasonable doubt, *People v Denson*, 500 Mich 385, 401; 902 NW2d 306 (2017), and it is impermissible for the prosecution to shift this burden to the defense, *People v Fyda*, 288 Mich App 446, 464; 793 NW2d 712 (2010). But it *is* permissible for a prosecutor to "comment on the failure of the defense to produce evidence" if the defense seeks to rely on that unproduced evidence. *People v Fields*, 450 Mich 94, 111 n 21; 538 NW2d 356 (1995) (quotation marks and citation omitted). A prosecutor may also attack the credibility of a theory advanced by the defense without shifting the burden of proof. *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).

During closing arguments in this case, defendant's trial counsel alluded to a statement that an unidentified witness gave to police that "three or four" people were outside of Thorne's building before the shooting, and emphasized that the police never took a statement from any of these individuals. In response to this argument, the prosecutor during rebuttal highlighted the testimony of two officers who said that they did not recall anyone else being outside of Thorne's apartment on the night of the shooting, as well as Jones' testimony that it was only himself and defendant outside of the apartment. The prosecutor then noted that

> if there were additional witnesses, the defense attorney could have subpoenaed them. She could have got those people here just as the prosecution has provided witnesses, she has the ability as well.
>
> If those witnesses existed, they could have been presented in court. They do not exist and that is evidenced by [defendant's trial counsel's] lack of subpoenaing them.

The prosecutor later argued that all of the evidence supported that defendant was the person that shot Jones because, despite defendant's claim that he was not the shooter, all of the evidence—including defendant's own testimony—placed defendant at the scene of the shooting, and there was nothing that refuted this.

Under the circumstances, the prosecution's rebuttal argument was not improper. The defense argued that there were several individuals outside of Thorne's apartment on the night of the shooting but police never took their statements. In response, the prosecution properly observed that the defense could have called these witnesses if they existed, but it did not. This was a fair response to the defense's argument. See *Fields*, 450 Mich at 111. The prosecutor in effect highlighted circumstantial evidence as to why the jury should disbelieve defendant's argument, and nothing about the prosecutor's remarks relieved the prosecution of its burden to prove every

element of the charged crime beyond a reasonable doubt. See *id*. at 112. As for the prosecutor's comment that it was undisputed that defendant was at the scene of the shooting, "[a] prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment." *People v Callon*, 256 Mich App 312, 331; 662 NW2d 501 (2003). For these reasons, we reject defendant's contention that the prosecution's rebuttal argument improperly shifted the burden of proof or otherwise amounted to prosecutorial misconduct.

## IV. SENTENCING

Next, defendant argues that he is entitled to resentencing because (1) the trial court erred when it assigned 15 points to OV 10 and (2) the court failed to justify the extent of its upward-departure sentence.

## A. STANDARDS OF REVIEW

A trial court's factual findings at a criminal sentencing are reviewed for clear error, and those findings must be supported by a preponderance of the evidence. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016). Whether a trial court's factual findings satisfy the statutory requirements for the court's chosen guidelines score presents a question of law, reviewed de novo. *Id*. Departure sentences are reviewed for reasonableness, and the applicable standard is an abuse of discretion. *Dixon-Bey*, 321 Mich App at 520. A trial court imposes an unreasonable sentence, and thus abuses its discretion, when the imposed sentence violates the principle of proportionality. *Id*. at 520-521.

## B. OV 10

Defendant first contests the trial court's scoring of OV 10. OV 10 is scored for "exploitation of a vulnerable victim." MCL 777.40(1). Fifteen points should be assigned to OV 10 if "[p]redatory conduct was involved . . . ." MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). "Preoffense conduct" as used in MCL 777.40(3)(a) refers only to preoffense conduct that is "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011).

The trial court did not clearly err when it found by a preponderance of the evidence that defendant engaged in predatory conduct under MCL 777.40(1)(a) by lying in wait for Jones. Thorne testified at trial that defendant was not supposed to know where she lived, and she assumed that defendant found out where she lived on the night he assaulted Jones by putting a tracking device in her car. On the night of the assault, defendant rang Thorne's buzzer in the early morning hours. When no one answered the door, defendant entered his car and appeared to drive away. But when Jones left the apartment shortly thereafter, defendant approached him with a gun and asked him if he knew Thorne. When Jones said "no," defendant persisted, telling Jones that he was "fucking up [defendant's] family." After a few more words were exchanged, defendant shot Jones in the chest. Despite getting shot, Jones managed to run away, and defendant shot at Jones while he ran, hitting him several more times. From this evidence, it was reasonable for the trial court to infer that defendant tracked Thorne's location and attempted to confront her while she had a male friend over. And it was further reasonable to infer that, when no one answered the door,

defendant pretended to leave, when, in actuality, he was lying in wait, planning to confront Jones when he left Thorne's apartment. Lying in wait is the textbook example of predatory conduct for which a score of 15 points for OV 10 is proper. See *Huston*, 489 Mich at 462.

Defendant on appeal contends that the trial court should have credited his testimony that he was merely at Thorne's apartment to retrieve his keys, that he went to move his car when Thorne did not answer the door, and that his argument with Jones occurred when defendant happened to run into Jones as he was leaving Thorne's building. But the trial court was free to disregard defendant's testimony and find by a preponderance of the evidence that, given the circumstances surrounding defendant's assault of Jones, defendant only pretended to drive away, when he was actually lying in wait to confront Jones when he left Thorne's apartment. Given the record evidence, we are not definitely and firmly convinced that this finding was a mistake.

## C. DEPARTURE SENTENCE

Defendant next contends that the trial court erred when it imposed an upward departure sentence without justifying the extent of the departure.

The principle inquiry for appellate courts reviewing any sentence that departs from the sentencing guidelines is whether the sentence is consistent with the principle of proportionality. *Dixon-Bey*, 321 Mich App at 520. The principle of proportionality asks courts to consider whether the imposed sentence accurately reflects the nature of the offense and the background of the offender. *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017). While the sentencing guidelines are now only advisory, see *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015), they "embody the principle of proportionality," *Dixon-Bey*, 321 Mich App at 524. Partly for this reason, trial courts imposing a departure sentence must explain " 'why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been.' " *Id*. at 525, quoting *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). This includes not only justifying the departure sentence itself but justifying "the *particular* departure made." *Smith*, 482 Mich at 303. This does not require sentencing courts to "sentence defendants with mathematical certainty," "[n]or are any precise words necessary for them to justify a particular departure." *Id*. at 311. It simply means that a trial court must justify the sentence imposed with enough detail to facilitate appellate review, which includes providing a sufficient explanation for appellate courts to determine whether the particular departure was justified. See *Dixon-Bey*, 321 Mich App at 525.

The trial court explained the reasons for its departure sentence at length. The primary reason the court gave for departing from the guidelines was because it did not believe that the guidelines accurately reflected the seriousness of defendant's conduct—it explained that OV 1 was scored at 25 points because a firearm was discharged towards Jones, but it did not account for the fact that the gun was fired at Jones multiple times, or that Jones was in fact shot four times; it explained that OV 3 was scored at 10 points because Jones' injuries required medical treatment, but the OV did "not take into consideration the excessive aspect of the injury" or the fact that Jones suffered multiple injuries all over his body; and the court explained that OV 19 was scored at 10 points because defendant tried to interfere with the administration of justice, but it did not take into account the sheer number of times that defendant tried to influence Thorne to fabricate her testimony and mislead the jury. The court surmised that "this was a brutal crime," and it did not

believe that the severity of defendant's conduct was reflected in the guidelines. The court noted that the guidelines' recommended a sentence of 19 to 38 months, which the court opined was "extremely inadequate," and it believed that "[a] reasonable and proportionate sentence" was 6 to 10 years.

Defendant does not contest that the trial court provided adequate reasons to depart from the sentencing guidelines, and argues instead that the court failed to justify the extent of the particular departure it handed down. But the trial court explicitly recognized the guidelines' range immediately before it imposed the departure sentence, demonstrating that it at least implicitly recognized the extent of the departure it imposed. And it explained at length why it was imposing such an extensive departure sentence—because, in the trial court's opinion, the guidelines did not accurately capture the severity of defendant's conduct. As there are no "magic words" trial courts must say to justify the particular extent of a departure sentence, see *Smith*, 482 Mich at 311, and because the trial court provided an explanation that was thorough enough for this Court to understand the trial court's reasons for the particular departure it imposed, see *Dixon-Bey*, 321 Mich App at 525, we reject defendant's contention that the trial court failed to justify the particular extent of the departure it imposed.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, in his Standard 4 brief, defendant argues that his trial counsel was ineffective for failing to raise an alibi defense and present an alibi witness at his trial.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this ineffective-assistance claim by moving for a *Ginther* hearing in this Court, so his claim is preserved. See *Lopez*, 305 Mich App at 693. But because this Court denied defendant's motion,[2] our review is still limited to mistakes apparent on the record. See *Haynes*, 338 Mich App at 429. With no factual issues to review, the question whether defendant was denied the effective assistance of counsel is a question of law, reviewed de novo. *Id.*

## B. ANALYSIS

As explained above, to be entitled to relief on an ineffective-assistance claim, defendant must demonstrate that (1) his trial counsel performed objectively unreasonably and (2) but for his trial counsel's unreasonable performance, there is a reasonable probability that the outcome of his trial would have been different. *Id.* "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). A strategy is not unsound merely because it did not succeed, and this Court will not second-guess trial counsel on matters of trial strategy. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020). "If this Court can conceive of a legitimate strategic

---

[2] *People v McGee-Coves*, unpublished order of the Court of Appeals, issued May 7, 2025 (Docket No. 37091).

reason for trial counsel's act or omission, this Court cannot conclude that the act or omission fell below an objective standard of reasonableness." *Haynes*, 338 Mich App at 429-430.

Defendant contends that his trial counsel was ineffective for failing to present an alibi defense and subpoena an alibi witness. In support of this argument, defendant attaches to his Standard 4 brief an affidavit signed by Raoni Shankin, in which she avers that defendant came to her home at 3:30 a.m. on April 28, 2023, that he "was wearing black pants, [a] blue-jean jacket with blue diamonds on the shoulders, and purple Jordan shoes," and that she was contacted by defendant's trial counsel "and informed him" of this information. This affidavit is facially unbelievable. First, defendant's trial counsel was female. Second, when defendant tried to coach Thorne on what to say at his trial, he told her to give the exact description of defendant's clothing on the night of the assault as Shankin gave in her affidavit—defendant wrote to Thorne telling her to say that defendant "was wearing [a] blue jean jacket with diamonds on [the] sleeves, black pants, [and] purple Jordan's." That aside, it is not credible that Shankin would remember in detail what defendant was wearing on a very specific night two years ago.

And even if the Shankin's testimony was not wholly unbelievable and defendant's trial counsel was aware of her testimony prior to trial, Shankin's testimony was obviously biased and would not have clearly supplied an alibi for defendant. The testimony at trial established that defendant shot Jones at some point after 3:00 a.m., and Shankin averred that defendant arrived at her home at 3:30 a.m. Given this, it would have been an objectively reasonable strategic decision not to call Shankin, especially if defendant's trial counsel had been informed that the witness would testify almost word for word what defendant had tried to coach Thorne to say. *People v McMillan*, 213 Mich App 134, 141; 539 NW2d 553 (1995) (holding that the defendant was not denied the effective assistance of counsel when the defendant's trial counsel failed to call an alibi witness because the Court did "not believe that [the witness] would have provided an effective alibi for defendant").

Finally, given Shankin's obvious bias and inability to definitively preclude defendant's guilt as juxtaposed with the other evidence against defendant, it is not reasonably likely that her testimony would have affected the outcome of the trial even if it had been presented at trial. In other words, even if it was objectively unreasonable for defendant's trial counsel to not call Shankin, defendant was not prejudiced by his counsel's unreasonable performance.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien